[No. A113034. First Dist., Div. Two. Feb. 25, 2008.]

KONRAD FELDMAN et al., Cross-complainants and Appellants, v.
1100 PARK LANE ASSOCIATES et al., Cross-defendants and Appellants.

1468

1472

**Counsel**

Edward C. Singer, Jr., for Cross-defendants and Appellants.

Beckman Marquez, Curtis F. Dowling, Richard E. Beckman for Cross-complainants and Appellants.

Oᴘɪɴɪᴏɴ

**KLINE, P. J.—**

## INTRODUCTION

Plaintiff and appellant 1100 Park Lane Associates (Park Lane) filed an unlawful detainer action against its tenant Peter Levis and Levis's subtenants, defendants and cross-appellants Konrad Feldman and Jennifer Foote-Feldman. The Feldmans filed a cross-complaint for damages against Park Lane, Walter Lembi and Andrew Hawkins (collectively Park Lane cross-defendants). Following dismissal of the unlawful detainer action upon Levis's giving up his tenancy and the Feldmans' vacating the apartment, Park Lane cross-defendants filed a special motion to strike the cross-complaint pursuant to the provisions of California's anti-strategic lawsuit against public participation (anti-SLAPP) statute (Code Civ. Proc., § 425.16).[1] The trial court granted the anti-SLAPP motion as to the Feldmans' cause of action for retaliatory eviction and denied it as to the remaining six causes of action of the cross-complaint. Park Lane cross-defendants appeal from the denial of their motion as to the six causes of action. The Feldmans cross-appeal from the grant of the anti-SLAPP motion on the retaliatory eviction cause of action.[2] We shall determine that the anti-SLAPP motion should have been granted as to all causes of action, except that of negligent misrepresentation.

## BACKGROUND

According to the cross-complaint and the declaration of Konrad Feldman in opposition to the anti-SLAPP motion to strike the cross-complaint, in April of 2005, the Feldmans were seeking to move to San Francisco from New York. They found an advertisement for a potential sublet of an apartment on Nob Hill in San Francisco. The Feldmans contacted the poster of the ad, tenant Levis, who agreed to sublet. Levis directed the Feldmans to Jon Seigel, whom Levis identified as the attorney for the owner of the building. The Feldmans contacted Seigel and exchanged e-mails regarding the sublet of the apartment in a building known as the Park Lane at 1100 Sacramento Street. The Feldmans forwarded personal private financial information to Seigel. On April 11, 2005, Seigel sent Konrad Feldman an e-mail stating: "You are accepted, conditioned on you, your wife, and Mr. Levis signing a document

---

[1] All statutory references are to the Code of Civil Procedure, unless otherwise indicated.

[2] An order granting or denying an anti-SLAPP motion is appealable pursuant to sections 425.16, subdivision (i) and 904.1, subdivision (a)(13).

that I will email to you later today. Additionally, I will not be involved with the lease arrangement between you and Mr. Levis. Feel free to email me or call me . . . with any questions." The Feldmans and Levis completed their revisions to the proposed additional occupant addendum to rental agreement (Addendum) provided by Seigel. The Feldmans then met with Levis on May 4, 2005, to sign the proposed Addendum as Seigel had instructed. They each signed two copies of the Addendum. The Feldmans authorized Levis to deliver the document to Seigel. Levis did so by leaving the document with the doorman at the Park Lane. Levis sent an e-mail that same day to Seigel confirming the executed Addendum had been delivered to Seigel via the "intra-building post." Believing they had done all that was required and that they were fully approved subtenants of Levis, the Feldmans moved into the apartment on or about May 9, 2005.

On May 13, 2005, the Feldmans received an e-mail from Seigel stating he had not received the Addendum, and reiterating that the sublet was approved conditioned upon his receipt of the signed Addendum. He stated: "Consequently, the sublet has not been approved. I will take action unless I receive the Addendum immediately." Levis and the Feldmans notified Seigel that Levis had handed the Addendum to the doorman in the usual manner. Seigel responded that the mail had been checked, but the Addendum had not been found, and that the Feldmans should "[t]ake care of this immediately." Jennifer Foote-Feldman delivered another copy of the fully executed Addendum to Seigel on May 25, 2005, which he acknowledged by e-mail on that date. At no time did Seigel state or imply that the signature of anyone other than the Feldmans and Levis was necessary for approval of the sublease or that the Addendum needed to be signed or approved by anyone other than himself.

On June 2, 2005, the Feldmans received notice from Andrew Hawkins, who identified himself as the "trouble shooter" for the owner of the apartments, that their sublease application had not been approved and they were in possession of the premises unlawfully. Although the Feldmans showed Hawkins their documentation from Seigel, Hawkins insisted that they were unapproved occupants and that they would either have to leave or pay "market rent" for the premises, estimated to be over $2,000 more per month than the monthly rental the Feldmans were paying under the sublease.

According to Konrad Feldman's declaration, on June 24, 2005, Hawkins made the following threatening comments to him: "(A) That he has done hundreds of evictions, so he knows the landlord will win, and how many had we done? [¶] (B) That regardless of the outcome of the current case, my wife

and I will never be able to rent another apartment in San Francisco; [¶] (C) That he understands the law and has discussed the case with his uncle, who is a federal judge; [¶] (D) That we will not be able to file suit against them because they will win; [and] [¶] (E) That we could not have read the Addendum properly."

*Unlawful detainer filing*

On or about June 28, 2005, Park Lane served the Feldmans with a three-day notice to quit, alleging that the Feldmans were unapproved sub-tenants in unlawful possession of the premises and had altered the premises without Park Lane's written approval (by replacing the carpet). On July 15, 2005, Park Lane filed an unlawful detainer complaint against Levis and the Feldmans alleging both grounds set forth in the three-day notice to quit. The unlawful detainer complaint alleged that the Feldmans had moved into the property without having obtained the prior written consent of Park Lane or its authorized representative. Levis, who had left for Spain in the interim, settled with Park Lane on August 8, 2005, terminated his month-to-month lease and surrendered his possession of the property. On August 31, 2005, in response to alleged "constant harassment" from Park Lane, its owner Walter Lembi, and Hawkins, and following Levis's surrender of his lease, the Feldmans vacated the premises.

*Cross-complaint for damages*

On October 6, 2005, the Feldmans filed a cross-complaint for damages against Park Lane, its alleged "managing member" Walter Lembi, and Hawkins. The cross-complaint alleged causes of action for (1) retaliatory eviction, (2) negligence, (3) negligent misrepresentation, (4) breach of the implied covenant of quiet enjoyment—tort and contract, (5) wrongful eviction, (6) breach of contract, and (7) unfair business practices (Bus. & Prof. Code, § 17200).

In addition to the facts set forth above, the Feldmans alleged that Park Lane cross-defendants had "embarked on a course of conduct designed to deny then-existing tenants of the Apartments the benefits accorded to such tenants under applicable state and local laws, including but not limited to the San Francisco Rent Stabilization and Arbitration Ordinance (hereinafter 'Rent Ordinance'), in an illegal effort to increase the income received by Park Lane from tenants of the Apartments."

*Anti-SLAPP motion*

On November 15, 2003, Park Lane cross-defendants filed an anti-SLAPP motion to strike the cross-complaint on the grounds that the causes of action

alleged therein arose "out of the alleged conduct of Cross-Defendants in furtherance of their rights to free speech and petition" under the United States and California Constitutions and that the Feldmans had not established a probability that they would prevail on their claims, because the alleged unlawful conduct was absolutely privileged pursuant to the litigation privilege of Civil Code section 47. The motion was accompanied by the declarations of Hawkins and Seigel, a declaration relating that Levis had surrendered possession of the apartment, and a copy of the rental agreement with Levis and the Addendum to the rental agreement.

Hawkins declared that he had four conversations with one or both of the Feldmans. In the first, he advised them that he believed their occupancy was in violation of the master lease and he "provided them with the following choices: vacate voluntarily, enter into a direct tenancy with the ownership, or face an unlawful detainer lawsuit. . . ." The second and third conversations were related to service of the unlawful detainer, and the last was when Konrad Feldman provided Hawkins with the keys upon surrender of the apartment. Attorney Seigel's declaration stated that he had "reviewed" the Feldmans' sublet application, that consent to the sublet was granted conditioned upon the execution of the Addendum, and that the Addendum not only required the signatures of Levis and the Feldmans, but also the signature of one of the principals of the entity that owned the building, Park Lane. He also declared that the Feldmans took possession on May 8, 2005, but that he never received notice until late May or early June and that he had warned them on May 18th that Levis's tenancy would be terminated and the Feldmans evicted if they took occupancy prior to the full execution of the Addendum. He acknowledged receiving the Addendum executed by Levis and the Feldmans after May 19th, but stated that it had never been signed by a principal of Park Lane.

The Feldmans filed their opposition to the anti-SLAPP motion, accompanied by the declaration of Konrad Feldman and copies of their e-mail correspondence with Seigel.

On December 14, 2005, following a hearing, the trial court granted Park Lane cross-defendants' special motion to strike the Feldmans' cross-complaint as to the first cause of action for retaliatory eviction and denied it as to the second through seventh causes of action. The court found that all seven causes of action arose from Park Lane's right of petition, but that the Feldmans had failed to establish a probability of prevailing on the first cause of action only. It awarded Park Lane cross-defendants their costs and attorney fees pursuant to section 425.16, subdivision (c), with the amount to be fixed pursuant to a noticed motion.

On January 20, 2006, Park Lane cross-defendants filed a timely notice of appeal from that portion of the order denying the special motion to strike the second through seventh causes of action of the cross-complaint. On February 14, 2006, the Feldmans cross-appealed from the court's grant of the anti-SLAPP motion as to the first cause of action for retaliatory eviction.

## DISCUSSION

### A. *The Anti-SLAPP Statute*

■ "A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713]; accord, *Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 34 [64 Cal.Rptr.3d 348].)[3]

Determination of a special motion to strike involves a two-part inquiry. " 'First, the court decides whether the defendant [here, Park Lane cross-defendants[4]] has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff [here the Feldman cross-complainants] has demonstrated a probability of prevailing on the claim.' " (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712 [54 Cal.Rptr.3d 775, 151 P.3d 1185], original ellipsis, quoting *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) " 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.]' (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].)" (*Rusheen v. Cohen,*

---

[3] Section 425.16, subdivision (b)(1), provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

[4] "That the underlying action was a cross-complaint rather than an original complaint is not statutorily significant as, '[f]or purposes of this section, "complaint" includes "cross-complaint . . . ." ' (§ 425.16, subd. (h).)" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735, fn. 2 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

*supra*, 37 Cal.4th at p. 1056.) "Thus, plaintiffs' burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment." (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 768 [131 Cal.Rptr.2d 201] (*Navellier II*).) If the plaintiff fails to carry that burden, the cause of action is "subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier I*).)

We review the trial court's decision to grant or deny the anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*).) In doing so, we consider " ' "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Flatley*, at p. 326.)

B. *Protected Activity*

██ In determining whether Park Lane cross-defendants have satisfied their burden under the first prong of the section 425.16 analysis, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier I, supra*, 29 Cal.4th at p. 89.) " 'The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' (*Id.* at p. 92.)" (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281 [67 Cal.Rptr.3d 190] (*Birkner*).) Section 425.16 defines an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue,' " to include statements or writings before a judicial proceeding, or any other official proceeding authorized by law and statements or writings made in connection with an issue under consideration or review by a judicial body. (§ 425.16, subd. (e); *Rohde v. Wolf, supra*, 154 Cal.App.4th at p. 35.) "Thus, statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest. [Citations.]" (*Rohde v. Wolf*, at p. 35.) Nor need defendants or cross-defendants bringing an anti-SLAPP motion prove the suit was intended to or actually did chill their speech. (*Flatley, supra*, 39 Cal.4th at p. 312; *Jarrow Formulas, Inc. v. LaMarche, supra*, 31 Cal.4th at p. 734.)

■ Section 425.16 itself provides that it "shall be construed broadly." (§ 425.16, subd. (a).) Such construction protects "the right of litigants to ' " 'the utmost freedom of access to the courts without [the] fear of being harassed subsequently by derivative tort actions.' " [Citations.]' [Citations.]" (*Rohde v. Wolf, supra,* 154 Cal.App.4th at p. 35.)

■ The scope of the protections afforded to litigation-related communications under the anti-SLAPP statute and that afforded by the litigation privilege (Civ. Code, § 47) are not identical. The two statutes "are substantively different statutes that serve quite different purposes . . . ." (*Flatley, supra,* 39 Cal.4th at pp. 322–324 [assuming activity illegal as a matter of law was protected by the litigation privilege of Civ. Code, § 47, it was not a protected communication for purposes of § 425.16]; see also *Birkner, supra,* 156 Cal.App.4th at pp. 284–285.) Nevertheless, the California Supreme Court has repeatedly recognized the relationship between the two. (*Flatley,* at pp. 322–323; see *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1121 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*).) Both the Supreme Court and the Court of Appeal "have looked to the litigation privilege as an aid in construing the scope of section 425.16, subdivision (e)(1) and (2) with respect to the first step of the two-step anti-SLAPP inquiry—that is, by examining the scope of the litigation privilege to determine whether a given communication falls within the ambit of subdivision (e)(1) and (2)." (*Flatley,* at pp. 322–323; see e.g., *Navellier II, supra,* 106 Cal.App.4th at p. 770 ["privilege informs interpretation of the 'arising from' prong of the anti-SLAPP statute [citation], but protections afforded by the statute and the privilege are not entirely coextensive [citations]"].)

The trial court found that all seven causes of action arose from Park Lane's right of petition. With the exception of the cause of action for negligent misrepresentation (addressed hereafter in the discussion of the applicability of the litigation privilege), it appears that the cross-complaint was based entirely upon the alleged threats by Hawkins, the service of the notice to quit, and the filing of the unlawful detainer action itself.

**1. *Filing of the unlawful detainer.*** ■ "The prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section 425.16." (*Birkner, supra,* 156 Cal.App.4th at p. 281, citing *Jarrow Formulas, Inc. v. LaMarche, supra,* 31 Cal.4th 728, 734–735; *Navellier I, supra,* 29 Cal.4th at p. 90; *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087 [114 Cal.Rptr.2d 825] ["It is well established that filing a lawsuit is an exercise of a party's constitutional right of petition."]; *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 19 [43 Cal.Rptr.2d 350] [right to petition includes act of filing litigation or otherwise seeking administrative action].)

Any doubt that the filing of an unlawful detainer action would not be included in the wide ambit of the anti-SLAPP statute is set to rest by *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232 [63 Cal.Rptr.3d 398, 163 P.3d 89] (*Action Apartment*), filed while this appeal was pending. *Action Apartment* did not involve the anti-SLAPP statute. Rather, the California Supreme Court held the litigation privilege of Civil Code section 47 entirely preempted the provision of a Santa Monica "tenant harassment" ordinance allowing suit for a landlord's malicious efforts to recover possession of a rental unit by filing of an eviction action. (41 Cal.4th at pp. 1237, 1249–1250.) In so determining, the court rejected the argument that the gravamen of initiating an eviction action is a course of conduct. "An action brought pursuant to this provision of the ordinance *is necessarily based on the filing of a legal action, which by its very nature is a communicative act. The filing of a legal action is not 'an independent, noncommunicative, wrongful act.'* [Citation.] We contemplate no communication that is more clearly protected by the litigation privilege than the filing of a legal action." (*Id.* at p. 1249, italics added.)

**2. *Service of the notice to quit.*** Service of the three-day notice to quit in this case was also protected activity within the meaning of section 425.16. (*Birkner, supra,* 156 Cal.App.4th at pp. 281–285.)

■ Service of a three-day notice to quit was a legally required prerequisite to the filing of the unlawful detainer action. (§§ 1161, subds. 3, 4, 1162; *Birkner, supra,* 156 Cal.App.4th at p. 282.) As such, Park Lane cross-defendants' service of the three-day notice to quit was a communication prepatory to the bringing of the unlawful detainer action. ■ " ' "[J]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . such statements are equally entitled to the benefits of section 425.16." [Citations.]' (*Briggs, supra,* 19 Cal.4th at p. 1115; see *Flatley, supra,* 39 Cal.4th at p. 322, fn. 11, quoting *Briggs, supra,* 19 Cal.4th at p. 1115 in rejecting plaintiff's contention that prelitigation communications do not fall within the ambit of section 425.16 [' " 'communications preparatory to or in anticipation of bringing an action or other official proceeding' " are protected by section 425.16'].)" (*Rohde v. Wolf, supra,* 154 Cal.App.4th 28, 35.)[5] Consequently, service of the notice to quit was protected communicative activity under section 425.16.

---

[5] Park Lane cross-defendants were not required at the first stage to demonstrate that serving the notice to quit was protected by the litigation privilege. Whether their conduct in serving the notice is subject to protection under the litigation privilege is a factual inquiry. (*Action Apartment, supra,* 41 Cal.4th at pp. 1250–1251.)

The first step of the anti-SLAPP analysis is satisfied, provided that the record does not show as a matter of law that Park Lane cross-defendants' conduct had "no 'connection or logical relation' to an action and [was] not made 'to achieve the objects' of any litigation." (*Fuhrman v.*

**3.** *Hawkins's statements.* Hawkins's alleged "threats" were similarly within the scope of the anti-SLAPP statute. Clearly these statements were communications in connection with an ongoing dispute and in anticipation of litigation. (See *Rohde v. Wolf, supra,* 154 Cal.App.4th at p. 36.)

**4.** *Recent cases.* At oral argument, the Feldmans argued that their causes of action (and particularly their breach of contract claim) were independent and separate from the Hawkins threats, service of the notice to quit, and filing of the unlawful detainer, so that even if those activities are protected, the Feldmans' suit did not "arise out of" and was not "based on" those activities. The Feldmans liken their suit to those of the plaintiffs in *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154 [64 Cal.Rptr.3d 488] *(Marlin)* and *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273 [65 Cal.Rptr.3d 469] *(DFEH).*

In *Marlin,* a landlord filed and served notice under the Ellis Act (Gov. Code, § 7060 et seq.) that it intended to remove units from the rental market. Tenants of the units sued for declaratory and injunctive relief, challenging the landlord's right to invoke the Ellis Act to evict them and seeking a declaration of their rights under the act. The landlords brought an anti-SLAPP motion, contending the tenants' suit arose from filing and serving the Ellis Act notices. The appellate court was willing to assume filing and service of the notices constituted protected free speech or petitioning activity, but concluded the landlord failed to show the suit arose from any act in furtherance of its right of petition or free speech. The court reasoned that simply because an action was filed *after* the service and filing of the notices, did not mean *it arose from* or was *based on* those protected activities. *(Marlin, supra,* 154 Cal.App.4th at p. 160.) "[T]he cause of plaintiffs' complaint was [the landlords'] allegedly wrongful reliance on the Ellis Act as their authority for terminating plaintiffs' tenancy. Terminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech." *(Id.* at pp. 160–161.) "[T]he [plaintiffs'] suit is not based on defendants' filing and serving of a notice required under the Ellis Act, it is based on the [plaintiffs'] contention 'defendants are not entitled to invoke or rely upon the Ellis Act to evict plaintiffs from their home.' " *(Id.* at pp. 161–162.)

*DFEH, supra,* 154 Cal.App.4th 1273, held that an action against a landlord for disability discrimination in refusing to recognize a tenant's disability in removing an apartment building from the rental market under the Ellis Act was not protected under the anti-SLAPP statute. (154 Cal.App.4th at

*California Satellite Systems* (1986) 179 Cal.App.3d 408, 422, fn. 5 [225 Cal.Rptr. 140, 231 Cal.Rptr. 113] [discussing the litigation privilege], disapproved on another ground in *Silberg v. Anderson* (1990) 50 Cal.3d 205, 219 [266 Cal.Rptr. 638, 786 P.2d 365] *(Silberg).*)

pp. 1284–1285.) Again, the appellate court assumed the landlord's "acts of filing and serving notices of its intent to remove its residential units from the rental market, its investigation and communications made necessary by the rent control removal process, and its filing and prosecuting its unlawful detainer actions against [the tenant] constituted protected petitioning or free speech activity." (*Id.* at p. 1283.) However, the court reasoned that the act forming the basis for the cause of action " ' "must *itself* have been an act in furtherance of the right of petition or free speech." [Citation.]' In other words, 'that a cause of action arguably may have been "triggered" by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]' " (*DFEH*, at p. 1284, fn. omitted.) The court acknowledged that the communications and the actual eviction itself were not the acts attacked in the complaint; instead, the allegations of wrongdoing arose from the landlord's alleged acts of failing to accommodate the tenant's disability. (*Id.* at p. 1284.) Various e-mails and the filing of the unlawful detainer were *evidence* of the disability discrimination. (*Id.* at pp. 1284–1285.) The court stated that while the suit may have been " 'triggered by' " the landlord's filing, serving, and processing of the paperwork necessary to remove its residential units from the rental market, it was not sued because "it filed these notices in the official . . . removal process, or because it communicated with [the tenant] in connection with the process, or even because it filed the unlawful detainer actions against her." (*Id.* at p. 1287.) Rather, the gravamen of the complaint was for disability discrimination, in the landlord's failure to accept the fact of and accommodate the tenant's disability by granting her an extension of her tenancy. (*Ibid.*)

More like the causes of action in the instant case, *Birkner, supra,* 156 Cal.App.4th 275, involved a complaint by tenants alleging wrongful eviction in violation of the San Francisco Rent Ordinance, negligence, breach of the covenant of quiet enjoyment, and intentional infliction of emotional distress. (*Id.* at p. 278.) The sole basis for liability in each of the causes of action was the service of a termination notice, pursuant to the rent ordinance, and the landlord's refusal to rescind it after the tenants informed him they constituted a protected household because of their age or disability and length of tenancy. Finding the activity was protected activity under the first prong of the section 425.16 analysis, Division Three of this court reversed the trial court's denial of the landlord's anti-SLAPP motion. It then remanded to allow the trial court to make findings on the second prong regarding whether the tenants had made a prima facie case of success on the merits. (*Birkner, supra,* at pp. 281–285, 286–287.) *Birkner* held that "[t]he prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section

425.16." (*Id.* at p. 281.) The court recognized that "[i]n general, '[t]erminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech.' [Citations.]" (*Id.* at pp. 281–282, quoting *Marlin, supra,* 154 Cal.App.4th 154, 161, and citing *Action Apartment, supra,* 41 Cal.4th 1232, 1250.) Nevertheless, *Birkner* concluded that, because the termination notice was a legal prerequisite for bringing the unlawful detainer action, it did constitute protected activity under the statute. (*Birkner,* at p. 282.) *Birkner* distinguished *Marlin* on the ground that the tenants' causes of action in *Marlin* were not based on the service or filing of the notices required under the Ellis Act, but on the contention that the landlords were not entitled to invoke or rely on the Ellis Act to evict the tenants. Because the basis for liability in *Birkner* was the service of the termination notice pursuant to the rent ordinance and the refusal to rescind it, "the complaint indisputably arose from 'activity protected under the anti-SLAPP statute.' [Citation.]" (*Birkner,* at p. 283.) The *Birkner* court also found *DFEH, supra,* 154 Cal.App.4th 1273, distinguishable for the same reason—that is that the landlord was not sued because of its actions in filing notices in the removal process, communicating with the tenant in connection with the process or filing the unlawful detainer against her. The suit was based on the alleged discrimination against her by the landlord in failing to accept and accommodate her disability by granting her an extension. (*Birkner,* at p. 283, fn. 3.)

We are mindful that the lines drawn in these cases are fine ones. However, we are reminded by our Supreme Court in *Navellier I, supra,* 29 Cal.4th 82, that the "focus" of the statute "is not the form of plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability . . . ." (*Id.* at p. 92; accord, *Birkner, supra,* 156 Cal.App.4th at p. 281.)

In our case, the Feldmans' cross-complaint is, with one exception, based upon the filing of the unlawful detainer, service of the three-day notice, and Hawkins's statements in connection with the threatened unlawful detainer. These activities are not merely cited as *evidence* of wrongdoing or activities "triggering" the filing of an action that arises out of some other independent activity. These *are* the challenged activities and the bases for all causes of action, except possibly that of negligent misrepresentation.

The Feldmans argue that their breach of contract cause of action is not covered by the statute, because the activity of breaching the contract is separate and distinct from the protected activities identified above. We disagree. First, it is established that conduct alleged to constitute a breach of

contract may also come within the statutory protections for protected speech or petitioning. (*Navellier I, supra*, 29 Cal.4th 82, 92; *Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 273 [68 Cal.Rptr.3d 499].) We focus, as we must, not on the label of the cause of action, but on Park Lane cross-defendants' *activities* challenged in the cross-complaint. The breach of contract claim contends that Park Lane cross-defendants "breached the Addendum by the actions alleged herein, and by illegally evicting Levis from the premises, seeking thereby to deprive Cross-complainants of their contractual rights to occupancy of the premises." "The actions alleged herein" are Hawkins's threats, the service of the three-day notice, and the filing of the unlawful detainer action. The activities that allegedly breached the contract *were* the protected activities. The claim that the eviction was "illegal" because the Feldmans were lawfully in possession under the Addendum does not transform these protected activities into something different or independent. The breach of contract cause of action arose from protected activity.

██ Accordingly, Park Lane cross-defendants satisfied their burden under the first step of the anti-SLAPP statute by establishing that their communicative activity was protected activity under section 425.16 as to all except the negligent misrepresentation cause of action. As to that cause of action, neither the anti-SLAPP statute nor the litigation privilege would appear to apply, as the gravamen of the cause of action was not the eviction action or communications or conduct prepatory thereto, but the misleading statements and representations allegedly made to the Feldmans by Seigel as Park Lane's agent, upon which they reasonably relied, to their detriment. (See discussion, *post*, at p. 1493.)

## C. *Probability of Prevailing*

With respect to the second step of the anti-SLAPP inquiry, the trial court concluded that the Feldmans had established a probability of prevailing on six of their seven causes of action. Park Lane cross-defendants argue that the Feldmans failed to establish a prima facie case by demonstrating a probability of success on the merits because *all* of the communications and conduct providing the bases for the cross-complaint fell within the litigation privilege of Civil Code section 47. Specifically, Park Lane cross-defendants contend that all of the causes of action of the cross-complaint, and the resulting damages, are premised on three communicative acts covered by the litigation privilege: Hawkins's June 24, 2005 conversation with the Feldmans, the service of the three-day notice to quit, and the filing of the unlawful detainer complaint. Park Lane cross-defendants assert that all these actions were taken in anticipation of, or in connection with, litigation.

The Feldmans counter that the three activities were not covered by the litigation privilege and that they retain their right to remedies for wrongful tenancy terminations; that the cross-complaint's reference to the unlawful detainer action was "merely incidental" and unnecessary; and that even if Park Lane cross-defendants met their initial burden on the anti-SLAPP motion, the Feldmans nonetheless established prima facie cases of liability on each of their causes of action.

The litigation privilege is "relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing. (See, e.g., *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 926–927 [120 Cal.Rptr.2d 576] [where the plaintiff's defamation action was barred by Civil Code section 47, subdivision (b), the plaintiff cannot demonstrate a probability of prevailing under the anti-SLAPP statute]; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 783–785 [54 Cal.Rptr.2d 830] [the defendant's prelitigation communication was privileged and trial court therefore did not err in granting motion to strike under the anti-SLAPP statute].)" (*Flatley, supra,* 39 Cal.4th at p. 323.)

"The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' (*Silberg*[, *supra,*] 50 Cal.3d 205, 216 . . . .) 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.' (*Id.* at p. 212.) *The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto,* or afterwards.' (*Rusheen v. Cohen*[, *supra,*] 37 Cal.4th 1048, 1057 . . . .)" (*Action Apartment, supra,* 41 Cal.4th at p. 1241, second italics added.)

" 'The principal purpose of [the litigation privilege] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. [Citations.]' (*Silberg, supra,* 50 Cal.3d at p. 213.)" (*Action Apartment, supra,* 41 Cal.4th at p. 1241.) To achieve this purpose of curtailing derivative lawsuits, the courts have interpreted the litigation privilege broadly. (*Ibid.*) Although originally designed to limit an individual's potential liability for defamation, the privilege has since been extended to apply to other torts. (*Id.* at pp. 1241–1242.) "[T]he litigation privilege has since 'been held to immunize

defendants from tort liability based on theories of abuse of process [citations], intentional infliction of emotional distress [citations], intentional inducement of breach of contract [citations], intentional interference with prospective economic advantage [citation], negligent misrepresentation [citation], invasion of privacy [citation], negligence [citation] and fraud [citations].' (*Silberg, supra,* 50 Cal.3d at p. 215.)" (*Action Apartment,* at p. 1242; accord, *Flatley, supra,* 39 Cal.4th at p. 322.) The privilege has been held to apply to suits to enjoin tortious conduct and to suits alleging interference with contract and related claims, including claims of unfair competition (Bus. & Prof. Code, § 17200 et seq.). (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1201–1203 [17 Cal.Rptr.2d 828, 847 P.2d 1044] [plaintiff may not " 'plead around' " privilege barrier by relabeling the nature of the action].)

The litigation privilege "is generally described as one that precludes liability in tort, not liability for breach of contract. [Citations.]" (*Navellier II, supra,* 106 Cal.App.4th 763, 773–775 [refusing to assume the privilege bars breach of contract action, but concluding cause of action should have been stricken because plaintiffs failed to substantiate any damages for breach of contract].) "[W]hether the litigation privilege applies to an action for breach of contract turns on whether its application furthers the policies underlying the privilege. [Citations.]" (*Wentland v. Wass* (2005) 126 Cal.App.4th 1484, 1492 [25 Cal.Rptr.3d 109] (*Wentland*).)

**1. *Unlawful detainer filing.*** As noted above, Park Lane's filing of the unlawful detainer action clearly fell within the litigation privilege. The Supreme Court in *Action Apartment, supra,* 41 Cal.4th 1232, held the litigation privilege of Civil Code section 47 preempted the provision of the Santa Monica tenant harassment ordinance that authorized civil and criminal penalties against a landlord bringing any action to recover possession of a rental unit without a reasonable factual or legal basis. (*Action Apartment,* at pp. 1249–1250.)

**2. *Service of the notice to quit.*** Service of the notice to quit was a prelitigation communication. "A notice of eviction is a communication regarding prospective litigation, and, as such, it is not *necessarily* part of a judicial proceeding. [Citations.]" (*Action Apartment, supra,* 41 Cal.4th at pp. 1250–1251, italics added.) "To be protected by the litigation privilege, a communication must be 'in furtherance of the objects of the litigation.' (*Silberg, supra,* 50 Cal.3d at p. 219.) This is 'part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action.' (*Id.* at pp. 219–220.) A prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration. [Citations.]" (*Action Apartment,* at p. 1251; see *Rohde v. Wolf, supra,* 154 Cal.App.4th at p. 36.)

In *Action Apartment,* the Supreme Court held the provision of the ordinance addressing the malicious serving of a notice to quit or other eviction notice, was not *entirely* preempted, but was preempted by the litigation privilege "only to the extent that it actually conflicts with the litigation privilege. [Citations.] That is, this provision of [the ordinance] conflicts with, and is preempted by, the litigation privilege to the extent it prohibits, criminalizes, and establishes civil penalties for eviction notices where litigation is contemplated in good faith and under serious consideration." (*Action Apartment, supra,* 41 Cal.4th at p. 1252, fn. omitted.) The court concluded that the test involves a "question of fact" and so made it "impossible to conclude, as the Court of Appeal did, that every action brought pursuant to the notice provision necessarily would be barred by the litigation privilege." (*Id.* at p. 1251.)

The Feldmans seize upon this portion of the *Action Apartment* holding to argue that whether service of the notice in *this* case was privileged under Civil Code section 47, subdivision (b), is a question of fact precluding a determination that they had failed to make a prima facie showing of likelihood of success. The Feldmans are mistaken. The question of fact is not whether the service was malicious or done with a bad intent or whether it was done based upon facts the landlord has no reasonable cause to believe to be true. Rather, the factual question identified by the Supreme Court is "[w]hether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration . . . ." (*Action Apartment, supra,* 41 Cal.4th at p. 1251.) As the Supreme Court explained, "The policy supporting the litigation privilege is furthered only if litigation is seriously considered: 'It is important to distinguish between the lack of a good faith intention to bring a suit and publications which are made without a good faith belief in their truth, i.e., malicious publications. The latter, when made in good faith anticipation of litigation, are protected as part of the price paid for affording litigants the utmost freedom of access to the courts. This policy consideration is not advanced, however, when the person publishing an injurious falsehood is not seriously considering litigation. In such a case, the publication has no "connection or logical relation" to an action and is not made "to achieve the objects" of any litigation [citation]. No public policy supports extending a privilege to persons who attempt to profit from hollow threats of litigation.' [Citations.]" (*Id.* at p. 1251.) The Supreme Court observed that the plaintiff's complaint in the case before it "offers very little description of the City's threatened action or the notice of eviction that [the landlord] allegedly served on her tenant." (*Id.* at p. 1252.)

Whether the Feldmans have established a prima facie case under the second step of the anti-SLAPP analysis is a question of law. (*Blanchard v.*

*DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 918 [20 Cal.Rptr.3d 385].) In *Blanchard v. DIRECTV,* the defendant DIRECTV sent demand letters requesting recipients cease using devices that could pirate the defendant's programming and providing recipients with an opportunity to resolve the matter by way of settlement before being sued. Thereafter, DIRECTV filed federal lawsuits against more than 600 people who purchased the pirating devices. (*Id.* at pp. 909–910.) The plaintiff recipients of the demand letters alleged three causes of action based on the demand letters, including violation of the unfair competition law (Bus. & Prof. Code, § 17200). (123 Cal.App.4th at p. 910.) The trial court granted the defendant DIRECTV's anti-SLAPP motion, striking the plaintiffs' lawsuits upon concluding the demand letters were absolutely privileged under Civil Code section 47. (123 Cal.App.4th at p. 909.) The appellate court affirmed, rejecting the plaintiffs' assertion that the demand letters were not sent in good faith and in serious consideration of litigation because the defendant knew it did not have a legally viable claim and that the defendant sent the letters only to coerce a settlement. (*Id.* at pp. 920–921.) In doing so, the court pointed out that in considering an anti-SLAPP motion, "the trial court *must consider facts so as to make a determination whether plaintiffs can establish a prima facie probability of prevailing on their claims.* [Citations.] Thus, while the court does not weigh evidence, it must determine whether plaintiffs have demonstrated evidence which, *if credited,* would justify their prevailing at trial. The court also considers [the defendant's] evidence to determine if it has defeated that submitted by plaintiffs as a matter of law. [Citation.]" (*Id.* at p. 921.) "DIRECTV demonstrated a logical relation between its demand letters and the lawsuits. At best plaintiffs have demonstrated a dispute about the applicability of the privilege, whereas DIRECTV has defeated plaintiffs' evidence. Because plaintiffs cannot show prima facie their probability of prevailing on the merits, as a matter of law, the trial court properly concluded that the litigation privilege applied. (Civ. Code, § 47, subd. (b).)" (*Blanchard v. DIRECTV, Inc.,* at p. 921.)

Similarly, in this case, Park Lane followed up its service of the notice to quit by promptly filing an unlawful detainer action against the Feldmans. The notice to quit was clearly connected to and logically related to the unlawful detainer action. At no point in the cross-complaint or accompanying declaration do the Feldmans contend that the notice to quit was a " 'hollow threat[]' " in that Park Lane never seriously intended to file the action against them. (*Action Apartment, supra,* 41 Cal.4th at p. 1251.) Indeed, Park Lane's prompt filing of the unlawful detainer action would belie any such assertion.

In sum, Park Lane cross-defendants demonstrated that the litigation privilege applied to the service of the notice to quit in this case. The Feldmans' showing failed to demonstrate prima facie that they could overcome the litigation privilege applicable to this prelitigation communication.

**3.** *Hawkins's statements.* For the same reasons set forth in our analysis of the service of the notice to quit, we conclude that Hawkins's statements or alleged threats to the Feldmans also came within the coverage of the litigation privilege and that the Feldmans failed to demonstrate that they could overcome the privilege.

Hawkins was Park Lane's representative and his statements concerned the Feldmans' tenancy. Crediting the Feldmans' description of Hawkins's statements, he told them they were unapproved occupants, he threatened them with legal action if they did not agree to pay market rent, he asserted that the Feldmans could not win an eviction suit, and that whatever the result of the threatened eviction, the Feldmans would never be able to rent another apartment in San Francisco. Whether taken individually or as a whole, Hawkins's statements were clearly connected to and made in anticipation of the eviction action they threatened. Whether done maliciously or without reasonable grounds to believe that the Feldmans were unlawful occupants of the premises, the statements were privileged.

The Feldmans counter that Hawkins's threat of litigation and "settlement demand" was a negotiating tactic and that such threat is not privileged. The Feldmans quote *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 35 [61 Cal.Rptr.2d 518] (*Edwards*),[6] and *Blanchard v. DIRECTV, Inc.,* *supra*, 123 Cal.App.4th 903, for the proposition that to come within the privilege, the statement must be made "*with a good faith belief in a legally viable claim* and in serious contemplation of litigation . . . ." (*Blanchard v. DIRECTV, Inc.*, at p. 919, italics added.) The foregoing statement of the test cannot mean that the party resisting the assertion of the privilege can defeat the claim simply by asserting that litigation to which the statement is related is without merit, and therefore the proponent of the litigation could not in good faith have believed it had a legally viable claim. To adopt such an interpretation would virtually eradicate the litigation privilege for all but the most clearly meritorious claims.

 Hawkins and Park Lane may well have used the threat of an eviction action as a "negotiating tactic," hoping to persuade the Feldmans to leave or

---

[6] In *Edwards*, the court concluded there had been no showing that either party seriously contemplated litigation at the time the defendants' assertedly privileged statements were made. (*Edwards, supra*, 53 Cal.App.4th 15, 35–36.) The plaintiff homeowners merely informed the defendant builder and engineering firms of cracks in their foundations and requested they be investigated and repaired. *The plaintiffs did not threaten or suggest litigation and the defendants did not deny or dispute their obligation to repair.* Nor was there any indication that the defendants themselves contemplated bringing suit at the time they made the communications that formed the basis of the plaintiffs' action. (*Id.* at pp. 37–39.)

pay market rent. However, "it is now well established that the litigation privilege applies without regard to 'motives, morals, ethics or intent.' ([*Silberg, supra*,] 50 Cal.3d at p. 220.) The litigation privilege is simply a test of connectedness or logical relationship to litigation. [Citation.]" (*Blanchard v. DIRECTV, Inc., supra*, 123 Cal.App.4th at p. 922.) There is no dispute that Hawkins asserted that the Feldmans were not lawfully in possession of the apartment and that he threatened litigation. Nor is there a dispute that the eviction action followed approximately six weeks later.

In *Rohde v. Wolf, supra*, 154 Cal.App.4th 28, the appellate court held that the litigation privilege applied to assertedly defamatory voicemail statements made by the attorney for a brother involved in a dispute with his sister over distribution of their deceased father's assets, where the attorney accused the plaintiff of conspiring to defraud her brother and stated his intention to "take 'appropriate action.' " (*Id.* at p. 36.) The superior court refused to grant the anti-SLAPP motion to strike the sister's suit against the attorney and the Court of Appeal reversed. The appellate court reasoned that the statements were made in connection with an asset that was the subject of the dispute in which both parties had threatened litigation. "In short, the spectre of litigation loomed over all communications between the parties at that time. Thus, the messages concerning the subject of the dispute and threatening appropriate action in that context had to be in anticipation of litigation 'contemplated in good faith and under serious consideration.' [Citation.]" (*Id.* at pp. 36–37, 38, quoting *Action Apartment, supra*, 41 Cal.4th at p. 1251.)

The Feldmans contend that *Rohde v. Wolf, supra*, 154 Cal.App.4th 28, is inapplicable and wrongly decided. First, they contend that in this case the "spectre of [imminent] litigation" did not "loom[] over all communications between the parties at [the] time." (*Id.* at p. 36.) However, in Hawkins's initial contact with the Feldmans, he asserted they were not lawfully in possession of the premises and threatened litigation. Indeed, it is these "threats" that provided one of the primary bases for the Feldmans' cross-complaint. We disagree with the Feldmans' assertion that litigation was not at that time "imminent." Moreover, the cases do "not hold or suggest that a complaint must be drafted before the privilege will apply." (*Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 268 [68 Cal.Rptr.2d 305]; see *Rohde v. Wolf*, at p. 36.) The Feldmans also argue that *Rohde v. Wolf* seems to contradict the Supreme Court's recognition in *Action Apartment* that the issue of whether prelitigation communications are privileged is a question of fact. We have addressed and rejected the Feldmans' assertion that this factual question precludes the grant of an anti-SLAPP motion. (See discussion, *ante*, at pp. 1486–1488.)

The Feldmans have failed to make a prima facie case that Park Lane cross-defendants did not seriously contemplate the eviction action at the time Hawkins made the statements or that the threat of litigation was a hollow one.

The Feldmans assert that Hawkins's actions were not privileged for the additional reason that he was not a party to the eviction, citing *Wise v. Thrifty Payless, Inc.* (2000) 83 Cal.App.4th 1296, 1304 [100 Cal.Rptr.2d 437]. In that case, the former wife sued the pharmacy that unlawfully provided her former husband with private medical information about her that he used in their dissolution action. (*Ibid.*) The court held the pharmacy could not take advantage of the litigation privilege shielding the ex-husband's use and communication of that information in the dissolution because the pharmacy was sued for its own tortious behavior in providing the information to the ex-husband, it was neither a litigant nor a participant in the action, and it did not provide the information in order to further the object of the litigation. (*Id.* at pp. 1306–1307.)

Here, the Feldmans concede that Hawkins represented Park Lane in making the alleged threats. Their cross-complaint alleged that at all relevant times he acted as an "employee or authorized agent of Park Lane whose duties included acting as a liaison" between tenants, management, and owner. Hawkins was not a stranger to the underlying eviction action. Indeed, he verified the unlawful detainer complaint and was clearly a participant in the unlawful detainer litigation.

We have concluded that the Feldmans failed to establish a probability of success on the merits insofar as Park Lane cross-defendants have produced evidence that Hawkins's statements, the service of the notice to quit and the unlawful detainer action were shielded by the litigation privilege (Civ. Code, § 47) and, the Feldmans' evidence, if credited, does not suffice to overcome the litigation privilege for these activities.

D. *Causes of Action Assertedly Based on Activities Other Than Those
 Protected by the Litigation Privilege*

The Feldmans contend that they established their prima facie cases of liability for each cause of action, separate and apart from evidence of the filing of the unlawful detainer or the preunlawful detainer notice of eviction. They further contend that the privilege does not apply to their causes of action for breach of contract, breach of the implied covenant of quiet enjoyment, and unfair competition (Bus. & Prof. Code, § 17200) claims.

First, the Feldmans assert that their causes of action are based upon state statutes and not local ordinances and that, therefore, the litigation privilege has no application. The Feldmans have conflated the preemption analysis of *Action Apartment, supra,* 41 Cal.4th 1232, with the reach of the litigation privilege itself. To the extent that a cause of action is created by a state statute, the litigation privilege does not *preempt* it. However, the litigation privilege has been held to apply broadly to *all* but a very few types of tort actions based on a privileged communication and also to suits for wrongful conduct outside the scope of traditional tort claims. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2007) ¶ 1:634, pp. 1-144 to 1-145.)[7] Clearly, the litigation privilege applies to the tort causes of action of the cross-complaint to the extent that the gravamen of the cause of action is the assertedly tortious filing of the unlawful detainer, the service of the notice to quit, or Hawkins's statements.

**First Cause of Action—Retaliatory Eviction.** The Feldmans' cause of action for retaliatory eviction (Civ. Code, § 1942.5, subd. (c)) alleged that Park Lane cross-defendants undertook the actions alleged in the complaint "for the purpose of retaliating against the Cross-complainants for exercising their rights under the law by asserting the lawfulness of their subtenancy, and by refusing to pay increased rent to occupy the premises." We agree with Park Lane cross-defendants that a retaliatory eviction occurs when the landlord attempts to evict the tenant *because of* the tenant's exercise of certain rights as set forth in Civil Code section 1942.5, subd. (c).[8] Here, we entertain serious doubts whether the rights asserted by the Feldmans (the right to continue as subtenants without paying increased rent) were encompassed by the retaliatory eviction statute. As to this cause of action, there were no actions taken or statements made by the Feldmans, independent of the actual eviction litigation and their assertion of their right to occupy the apartment. Moreover, the allegations of the complaint and the declarations demonstrate that Park Lane cross-defendants' communications threatening eviction were not in *retaliation* for the Feldmans' lawful exercise of any

---

[7] The privilege does not apply to causes of action for malicious prosecution. (See *Ribas v. Clark* (1985) 38 Cal.3d 355, 364 [212 Cal.Rptr. 143, 696 P.2d 637]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra,* ¶ 1:635, p. 1-145.)

[8] "It is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because he or she has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights *or has lawfully and peaceably exercised any rights under the law.* In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory." (Civ. Code, § 1942.5, subd. (c), italics added.)

rights under the sublease, but rather came *before* the Feldmans' assertion that the sublease was valid. Any other result would render every unlawful detainer action subject to a cause for retaliatory eviction based solely on the tenant's assertion, whenever made, that he or she had a right to remain in the premises.

Consequently, the Feldmans failed to make a prima facie showing they were likely to succeed on their retaliatory eviction cause of action. The trial court did not err in granting the special motion to strike this cause of action.

*Second Cause of Action—Negligence.* The negligence cause of action asserted that plaintiff had breached its duty of care by the "acts or omissions alleged herein." The acts and omissions referenced are Hawkins's statements, service of the notice to quit and the filing of the unlawful detainer. In their supplemental letter brief, the Feldmans contend that the duty was breached by "the heavy-handed tactics employed by Hawkins to get the Feldmans to move out, or pay higher rent." As we have determined that Hawkins's threats were protected communications, the litigation privilege provides a defense to the negligence cause of action. The Feldmans failed to demonstrate a likelihood of prevailing on this cause of action.

*Third Cause of Action—Negligent Misrepresentation.* The Feldmans assert their cause of action for negligent misrepresentation was not based on Hawkins's statements, service of the notice to quit, or the filing of the eviction action, but upon Seigel's approval of the sublease as an agent for Park Lane cross-defendants. The cross-complaint alleged Seigel represented that the sublease was approved, subject only to Levis and the Feldmans signing the Addendum and returning it to Seigel, that the representations were made without reasonable grounds for believing them to be true, were not true, and that they were made with the intent to induce the Feldmans to move into Park Lane. It further alleged that the Feldmans relied upon the representations and, by doing so, suffered damage as a result. Konrad Feldman's declaration sets forth the damages allegedly caused by this negligent misrepresentation. This cause of action does not appear to be based upon the communications or communicative conduct covered by the litigation privilege. The trial court properly found the Feldmans had made their prima facie case of likelihood of success as to the negligent misrepresentation cause of action.

*Fifth Cause of Action—Wrongful Eviction.* The cause of action for wrongful eviction in violation of the San Francisco Rent Ordinance, San Francisco Administrative Code sections 37.9 or 37.10A, was preempted by the litigation privilege. The rent ordinance is effectively indistinguishable

for the purposes of this action from that addressed by the Supreme Court in *Action Apartment, supra*, 41 Cal.4th 1232. The cause of action based on wrongfully endeavoring to recover possession was clearly premised on Hawkins's statements, the service of the notice of eviction and the filing of the unlawful detainer action. As we have discussed heretofore, the filing of the unlawful detainer and the service of the notice to quit were covered by the litigation privilege under the analysis of *Action Apartment*. The Feldmans contend that Hawkins's threats were "endeavor[s] to recover possession" of the rental unit under the rent ordinance and were not covered by the litigation privilege. We have heretofore concluded that Hawkins's communications to the Feldmans were connected and logically related to the unlawful detainer action and were made " 'in furtherance of the objects' " of that litigation. (*Id.* at p. 1251, quoting *Silberg, supra*, 50 Cal.3d at p. 219; see *Rohde v. Wolf, supra*, 154 Cal.App.4th at pp. 36–38.) As such, they were covered by the litigation privilege. The Feldmans failed to prove a likelihood of success on this cause of action.

***Sixth Cause of Action—Breach of Contract.*** The Feldmans' cross-complaint alleges that Park Lane breached the terms of the Addendum providing that they would be entitled to occupy the premises under the terms of the master lease between Levis and Park Lane and that they would be entitled to all the rights and privileges of the master lease so long as they observed the requirements and conditions thereof. The cross-complaint alleges that "Cross-defendants breached the Addendum by the actions alleged herein, and by illegally evicting Levis from the premises, seeking thereby to deprive Cross-complainants of their contractual rights to occupancy of the premises." The Feldmans argue simply that breach of contract actions are not covered by the litigation privilege, citing *Wentland, supra*, 126 Cal.App.4th 1484. Park Lane cross-defendants counter that as the breach of contract action was based upon communicative activities that were connected with and logically related to the unlawful detainer action, they were privileged.

As we have recognized, the litigation privilege was founded on defamation actions, and has been applied primarily to provide absolute immunity from *tort* liability for communications with " 'some relation' " to judicial proceedings. (*Rubin v. Green, supra*, 4 Cal.4th 1187, 1193; see *Navellier I, supra*, 29 Cal.4th at p. 94; *Navellier II, supra*, 106 Cal.App.4th at p. 774 [opn. on remand]; *Wentland, supra*, 126 Cal.App.4th at p. 1491.) Nevertheless, courts have applied the litigation privilege to breach of contract cases. (*Laborde v. Aronson* (2001) 92 Cal.App.4th 459 [112 Cal.Rptr.2d 119]; *Pollock v. Superior Court* (1991) 229 Cal.App.3d 26 [279 Cal.Rptr. 634]; see *Wentland*, at p. 1492.)

"In *Laborde v. Aronson, supra*, 92 Cal.App.4th 459, the plaintiff contended his suit for breach of contract and various torts against the psychologist retained to conduct a custody evaluation in a dissolution proceeding was not barred by the litigation privilege. The court disagreed, finding the privilege applied where the gravamen of the complaint was negligent or intentional tortious conduct committed in connection with the testimonial function. (*Id.* at p. 463.)" (*Wentland, supra*, 126 Cal.App.4th at p. 1493.) "In *Pollock v. Superior Court, supra*, 229 Cal.App.3d 26, the plaintiff, an attorney, was sanctioned for failing to appear at a mandatory settlement conference. Claiming he relied on opposing counsel to notify the court of a settlement and to take the settlement conference off calendar, the plaintiff sued opposing counsel for breach of contract and fraud. The appellate court found opposing counsel's demurrer should have been sustained. (*Id.* at p. 28.) The plaintiff had numerous remedies if he believed the sanction order was in error . . . . (*Id.* at p. 29.) Public policy did not support permitting attorneys to sue one another for omissions and representations made during litigation which 'could lead to geometric proliferation of litigation.' (*Id.* at p. 30.)" (*Wentland*, at pp. 1492–1493.)

In *Wentland, supra*, 126 Cal.App.4th 1484, the plaintiffs brought an action for an accounting in several partnerships. The defendant Wentland moved for summary judgment as to one of the partnerships (Consolidated Investors) on the grounds that the dissolution and winding up of the partnership barred the accounting and the plaintiffs had failed to allege any substantive wrongdoing. In opposition, the plaintiffs argued the audit was warranted as an audit of two other partnerships (one of which was Parkview Terrace) had revealed evidence of self-dealing by the defendant. The plaintiffs filed declarations by their attorney and the accountant-auditor of the partnerships describing the alleged self-dealing. (*Id.* at p. 1487.) More than two years later, the defendant filed a cross-complaint against the plaintiffs alleging that he had reached an agreement with the plaintiffs concerning the Parkview Terrace partnership and that the agreement had provided that the plaintiffs would make no accusation or comment alleging wrongdoing by the defendant concerning that partnership, the terms of the agreement would be kept confidential, one of the plaintiffs signed a letter of apology that the defendant could release in the event of a breach of the agreement, and providing for liquidated damages of $30,000 in the event of a breach by the plaintiffs. The cross-complaint alleged that the plaintiffs had breached that agreement by statements of their attorney and their accountant in a declaration in opposition to summary judgment in the Consolidated Investors case. Among other things, the cross-complaint sought damages for breach of contract. (*Id.* at pp. 1487–1488.) The plaintiffs demurred on the ground the disclosures upon which the cross-complaint was based were privileged under Civil Code section 47. The trial court sustained the demurrer, finding the privilege applied. Following entry of a final

judgment dismissing the complaint and cross-complaint, the defendant appealed the dismissal of his breach of contract cause of action (126 Cal.App.4th at p. 1488), and the Court of Appeal reversed (*id.* at pp. 1487, 1496).

From its review of the few cases considering the litigation privilege in the breach of contract context, *Wentland, supra,* 126 Cal.App.4th 1484, reasoned that "whether the litigation privilege applies to an action for breach of contract turns on whether its application furthers the policies underlying the privilege. [Citations.] [¶] . . . In summary, the purpose of the litigation privilege is to ensure free access to the courts, promote complete and truthful testimony, encourage zealous advocacy, give finality to judgments, and avoid unending litigation." (*Id.* at p. 1492, citing *Silberg, supra,* 50 Cal.3d at p. 214.) Based upon this analysis, *Wentland* concluded that the litigation privilege should not apply in the breach of contract case before it. (*Wentland,* at p. 1494.)

In concluding the privilege did not apply to bar the cross-complaint, the appellate court in *Wentland* reasoned: "Just as one who validly contracts not to speak waives the protection of the anti-SLAPP statute (*Navellier [I],* *supra,* 29 Cal.4th at p. 94), so too has he waived the protection of the litigation privilege. The litigation privilege has never shielded one from all liability. One who makes an injurious communication may be criminally liable for perjury [citation], or subject to professional disciplinary proceedings [citation]. [¶] The policies behind the litigation privilege are not furthered by its application in this case. Unlike in the usual derivative tort action, application of the privilege in the instant case does not serve to promote access to the courts, truthful testimony or zealous advocacy. This cause of action is not based on allegedly wrongful conduct *during* litigation, as in *Pollock v. Superior Court, supra,* 229 Cal.App.3d 26, and *Laborde v. Aronson, supra,* 92 Cal.App.4th 459. Rather, *it is based on breach of a separate promise independent of the litigation,* as in *ITT Telecom Products Corp. v. Dooley* [(1989)] 214 Cal.App.3d 307 [262 Cal.Rptr. 773] [(privilege not applicable to statements in breach of an express contract of confidentiality or nondisclosure)]. This breach was not simply a communication, but also wrongful conduct or performance under the contract, as in *Stacy & Witbeck[, Inc. v. City and County of San Francisco* (1996) 47 Cal.App.4th 1 [54 Cal.Rptr.2d 530]] [(holding suit under the False Claims Act not barred as the claim was required under the contract and thus served a purpose independent of its litigation purpose)]. Like the example of the covenant not to sue in *Navellier II,* [*supra,* 106 Cal.App.4th 763], here application of the privilege would frustrate the purpose of the Parkview Terrace agreement." (*Wentland, supra,* 126 Cal.App.4th at p. 1494, italics added.)

The *Wentland* court then turned to the purposes of the litigation privilege and found they were not served by its application to the confidentiality agreement. Rather than encouraging finality and avoiding litigation, application of the privilege to allow comments to be made in litigation, contrary to the terms of the settlement agreement, "invites further litigation as to their accuracy and undermines the settlement." (*Wentland, supra,* 126 Cal.App.4th at p. 1494.) The court also rejected the argument that the "gravamen of the cross-complaint is that [the plaintiffs] tortiously damaged [the defendant] through their alleged false statements." (*Ibid.*) Rather, the court concluded that the cross-complaint alleged that the plaintiffs had breached the agreement by authorizing the negative comments, "not because such comments were false (although it alleged they were), but because they had promised not to continue to make such comments. The cross-complaint sounds in contract, not tort." (*Id.* at p. 1495.)

In the case before us, neither party has conducted the type of analysis suggested by *Wentland* to determine whether application of the litigation privilege in the circumstances presented "furthers the policies underlying the privilege. [Citations.]" (*Wentland, supra,* 126 Cal.App.4th at p. 1492.) Our analysis persuades us that application of the privilege here does further those policies.

Here, unlike *Wentland* and several of the cases relied on by it, there was no breach of a confidentiality agreement or other agreement not to sue or to refrain from comment. The agreement alleged to have been breached was the Addendum (to the master lease), the validity of which was at issue in the unlawful detainer action itself. Nor can we say that the cross-complaint was "based on breach of a separate promise independent of the litigation." (*Wentland, supra,* 126 Cal.App.4th at p. 1494, citing *ITT Telecom Products Corp. v. Dooley, supra,* 214 Cal.App.3d 307.) Rather, much like *Pollock v. Superior Court, supra,* 229 Cal.App.3d 26, and *Laborde v. Aronson, supra,* 92 Cal.App.4th 459, the breach of contract cause of action here is based on allegedly wrongful conduct by Park Lane and others in threatening and initiating litigation over the subtenancy. The core of cross-complainants' case, however labeled, is that they were lawfully in possession of the premises as subtenants approved by Park Lane and that Park Lane cross-defendants harassed them with threats of eviction, initiated an unlawful detainer action, and forced them to leave. The same communicative conduct formed the basis for the tort and breach of contract causes of action, except for the negligent misrepresentation cause of action. Nor can we say, as did the *Wentland* court, that application of the privilege to allow this breach of contract claim would invite further litigation. Clearly, the contrary is true. In these circumstances,

application of the privilege furthers the policy of allowing access to the courts without fear of harassing derivative actions. The litigation privilege applies to bar this breach of contract claim.

*Fourth Cause of Action—Breach of the Covenant of Quiet Enjoyment—Tort and Contract.* In addition to unspecified "other acts and omissions," the actions specifically alleged to have interfered with the Feldmans' peace and quiet enjoyment of the premises are cross-defendants and their agents (including Hawkins) "verbally harassing" the Feldmans and "endeavoring to recover possession of the premises," and their "attempted the retaliatory eviction" of the Feldmans. The same analysis applied to the breach of contract cause of action persuades us that the cause of action for breach of the covenant of quiet enjoyment—pleaded as both a tort and a contract claim—is barred by the litigation privilege.

*Seventh Cause of Action—Unfair Business Practices.* The cross-complaint alleged a claim for unfair business practices under Business and Professions Code section 17200. The litigation privilege extends to claims such as this. (See *Rubin v. Green, supra,* 4 Cal.4th 1187, 1201–1203; *Blanchard v. DIRECTV, Inc., supra,* 123 Cal.App.4th 903, 909–910.) In their opposition to the motion to strike, the Feldmans acknowledged that this cause of action was based upon the previously asserted retaliatory eviction (Civ. Code, § 1942.5) and upon their previously asserted violations of the San Francisco Rent Ordinance. We have heretofore determined that the litigation privilege bars those causes of action. A fortiori it bars this derivative claim.

## CONCLUSION

The litigation privilege applies to bar the cross-complaint causes of action for retaliatory eviction, negligence, breach of the implied covenant of quiet enjoyment, wrongful eviction under the rent ordinance, breach of contract and unfair business practices. It does *not* apply to the cause of action for negligent misrepresentation, as to which the Feldmans have made their prima facie showing of likelihood of success. Consequently, the trial court correctly granted the motion as to the cause of action for retaliatory eviction and denied it as to the cause of action for negligent misrepresentation. As to the other causes of action, the trial court erred in denying the anti-SLAPP motion.

## DISPOSITION

The order denying the motion to strike the cross-complaint causes of action for negligence, breach of the implied covenant of quiet enjoyment, wrongful eviction under the rent ordinance, breach of contract, and unfair business practices is reversed and the matter remanded with directions to grant the motion as to those causes of action. The order is affirmed insofar as it grants the motion to strike the cause of action for retaliatory eviction and denies the motion to strike the cause of action for negligent misrepresentation. Park Lane cross-defendants are awarded their costs on this appeal.

Haerle, J., and Lambden, J., concurred.