Filed 2/17/22  Mendoza v. Gramse CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JAMES MENDOZA,<br><br>    Plaintiff, Cross-defendant and<br>    Appellant,<br><br>    v.<br><br>MARILYN GRAMSE,<br><br>    Defendant, Cross-complainant<br>    and Respondent. | D078307<br><br><br><br>(Super. Ct. No. 37-2020-00018150-CU-BC-CTL) |


APPEAL from an order of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Andre L. Verdun for Plaintiff, Cross-defendant and Appellant.

Law Offices of Michael W. Jacobs, Michael W. Jacobs, and Janine R. Menhennet for Defendant, Cross-complainant and Respondent.


James Mendoza sued his landlord, Marilyn Gramse, for refusing to repair allegedly substandard conditions in her home (where he rented a room) and retaliating against him when he complained.  Gramse responded

with a cross-complaint alleging elder abuse and breach of the parties' lease. Filing an anti-SLAPP motion,[1] Mendoza claimed Gramse's cross-claims were based on his protected prelitigation statements and conduct, including his threat to sue Gramse. Denying the motion, the trial court concluded that properly construed, Gramse's cross-claims against Mendoza were based solely on *unprotected* activity. Rejecting Mendoza's contentions on appeal, we agree with the trial court and conclude Mendoza did not meet his moving burden to show that Gramse's causes of action arose out of activity that the anti-SLAPP statute protects. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Mendoza rented a room in Gramse's single-family home in El Cajon. A dispute arose after Gramse raised Mendoza's rent, prompting Mendoza to sue and Gramse to respond with a cross-complaint. Mendoza's motion to strike the cross-complaint, and the trial court's order denying that request, are at issue in this appeal.

A. *Complaint and Cross-complaint*

In June 2020, Mendoza sued Gramse for damages, claiming she refused to make repairs to render her single-family home habitable.[2] He alleged that San Diego County's Department of Environmental Health and Quality (DEH) had warned Gramse to provide hot water on demand and central heat, but

---

[1] "A 'SLAPP' is a ' "strategic lawsuit against public participation" ' [citation], and special motions to strike under [Code of Civil Procedure] section 425.16 are commonly referred to as '[a]nti-SLAPP motions' [citation]." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1007, fn. 1 (*Bonni*).) (Further undesignated statutory references are to the Code of Civil Procedure.)

[2] On our own motion, we augment the record with a copy of the complaint filed by Mendoza on June 2, 2020. (Rules of Court, rule 8.155(a)(1)(A).)

2

that Gramse continued to rent her home for profit while refusing to make needed repairs. According to Mendoza, Gramse retaliated against him for reporting these conditions by, among other things, raising his rent and eventually forcing him to vacate illegally and without a court order. The complaint asserted five causes of action: retaliation (Civ. Code, § 1942.5); failure to make required repairs (*id.,* § 1942.4); interfering with his quiet enjoyment of the premises (*id.,* § 1940.2); and negligence per se and unlawful business practices (Bus. & Prof. Code, § 17200) based on those alleged statutory violations.

Gramse responded by filing a cross-complaint against Mendoza for elder abuse and financial elder abuse under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.), intentional infliction of emotional distress, and breach of contract. Her allegations tell a different story about the parties' interactions than the one offered by Mendoza. A 79-year-old homeowner, Gramse alleged she leased a room to Mendoza on a month-to-month lease beginning in July 2017. Their relationship soured, and in January 2019, Gramse asked him to vacate as permitted under their lease. Mendoza reacted with harassment and threats. He "routinely screamed at [her] and threatened to 'sue and take [her] property.' He also continually referred to his firearm in a menacing manner." According to Gramse, by the summer of 2019 Mendoza stopped paying rent. After several failed attempts to get him to leave, Gramse had the San Diego County Sheriff's department personally serve him with a three-day Notice to Pay or Quit in August 2019. Mendoza later abandoned the premises. Gramse then served him with a Notice of Belief of Abandonment and eventually removed and donated the personal property he had left behind.

3

B.    *Anti-SLAPP Motion*

Mendoza filed a special motion to strike the entire cross-complaint under the anti-SLAPP statute (§ 425.16).  Relying mostly on the general allegation pleaded in paragraph 12 of the cross-complaint that Mendoza harassed Gramse by threatening to " 'sue and take her property,' " he claimed he met his moving burden to show that all four cross-claims arose out of his protected petitioning activity.  In Mendoza's view, threats to sue Gramse constituted protected prelitigation communications under *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467 (*Feldman*).[3]  Mendoza likewise asserted he was entitled to withhold rent and refuse to vacate (as alleged in paragraph 15 of the cross-complaint) under *Green v. Superior Court of San Francisco* (1974) 10 Cal.3d 616 (*Green*) and Civil Code section 1942.4, such that a claim based on the nonpayment of rent accordingly arose out of an *act* in furtherance of his right to petition.[4]  Once the burden shifted to Gramse, Mendoza argued the litigation privilege (Civ. Code, § 47, subd. (b))

---

[3]    Alleged threats by the landlord's attorney in *Feldman* directing the sublessees to vacate, pay market rent, or face an unlawful detainer action were protected under the anti-SLAPP statute as "communications in connection with an ongoing dispute and in anticipation of litigation." (*Feldman, supra,* 160 Cal.App.4th at p. 1481.)

[4]    *Green* held that a warranty of habitability is implied by law in all California residential leases.  (*Green, supra,* 10 Cal.3d at p. 631.)  Because a tenant's duty to pay rent is mutually dependent on the landlord's fulfillment of the implied warranty of habitability, a tenant may assert that the landlord breached that warranty in defending against an unlawful detainer action. (*Id.* at p. 635.)  Civil Code section 1942.4 statutorily prohibits a landlord from collecting or demanding rent for substandard dwellings.  We will explore the potential application of these authorities to the prong one anti-SLAPP inquiry in section B.2 of the discussion, *post.*

prevented her from demonstrating a likelihood of prevailing on the merits of her cross-claims.

In a supporting declaration, Mendoza claimed that he "intended to resolve an on-going dispute" at the time he threatened to sue Gramse. He explained that Gramse's home lacked central heat, and hot water was available only in the mornings and evenings. Mendoza maintained he told Gramse that he would withhold rent until the substandard conditions were repaired. When Gramse failed to take corrective action, Mendoza states he contacted the county, which purportedly cited Gramse for not providing hot water on demand or adequate heat. Gramse defied the citation, telling the county it was "my house, my rules!!" Mendoza asserts she then grew outraged, threatening Mendoza's life, leaving harassing voicemails for his employer that got him fired, and sending him retaliatory notices to vacate.

Attached to Mendoza's declaration were three letters between DEH and Gramse. On January 22, 2019, DEH cited Gramse for substandard conditions based on the lack of hot water and adequate heat in her home. Gramse responded a week later by letter. She explained to DEH that hot water was set on a timer to be available mornings and evenings, and the fireplace provided adequate heat. Noting Mendoza was on a month-to-month lease and welcome to leave, she suggested it was not fair to require modifications, stating: "It seems like my house[,] my rules!!" On April 15, 2019, DEH sent Gramse a notice and order requiring her to provide adequate heating and hot water on demand within 90 days or return the premises to being solely owner-occupied.

C.    *Opposition*

Gramse opposed the anti-SLAPP motion, arguing her case was not about Mendoza's protected activity but rather "about an elderly woman

5

taking in lodgers to supplement fixed expenses on a fixed income, and an abusive roommate." She claimed that Mendoza became angry in response to a rent increase and "embarked on a campaign of harassment and intimidation, designed purely for the end game of taking [Gramse's] home." While acknowledging that the cross-complaint referenced Mendoza's threat to sue, that threat came in the middle of a months-long course of harassment and intimidation that began *before* Mendoza reported habitability concerns to DEH. Gramse maintained that Mendoza could not "cloak his threats and conduct with the mantle of a pre-judicial proceeding." The mere fact that the cross-complaint was filed after protected activity took place did not mean that it *arose from* that activity.

To the extent the burden shifted to her to demonstrate that her cross-claims had minimal merit, Gramse argued the litigation privilege did not apply because Mendoza's threats to sue were not made in good faith while seriously contemplating litigation (citing *Action Apartment Assn. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251). Further contending that Mendoza's anti-SLAPP motion was frivolous, Gramse requested an award of $3,420 in attorney's fees. (§ 425.16, subd. (c)(1).)

Gramse's supporting declaration fleshed out the factual basis for her cross-claims. As an elderly woman, Gramse had long taken in roommates to help cover her maintenance costs and tax obligations. She and Mendoza verbally agreed to a month-to-month lease in mid-2017, pursuant to which Mendoza would rent a room in her house for $650 per month. Around April 2018, the home's solar hot water system broke. Gramse placed the hot water on a timer to ensure it would run in the morning and evening. Mendoza never complained about the hot water, nor about the lack of central heat (in lieu of which space heaters were offered). In June of that year, Mendoza

6

started working from home and installed an air conditioning unit in his room, causing Gramse's electric bills to soar. When she asked him to reimburse her and eventually raised his rent to $697 to cover the added expense, Mendoza became "verbally abusive, including letting [her] know about his gun and that he could use it at any time." There were never any attempts to compromise, nor any discussions regarding dissatisfaction with the hot water timing or space heater.

It was in this context that Mendoza reported Gramse to DEH in January 2019. Following that complaint, Gramse was told that she could no longer rent rooms unless she made repairs. She asked her roommates to leave, but all three (including Mendoza) stayed. In early February, Mendoza "yelled at [Gramse], telling [her] he was going to take [her] home from [her] and sue [her] for all [she] was worth." Gramse grew so afraid of Mendoza that she installed locks on her master bedroom door and communicated with him solely by posting notes on his door. She eventually obtained a restraining order against him.

In August 2019, Mendoza left for a few days. Assuming he had moved out, Gramse called Mendoza's brother to come retrieve his belongings. She received a "threatening voicemail" from Mendoza the next day, warning her not to touch his stuff. She posted an eviction notice on Mendoza's door and issued an abandonment notice for his belongings in October. Hearing nothing for three months, she donated his belongings to charity.

Tenant Will Scriven also submitted a declaration in support of Gramse's opposition. Scriven testified that he moved into Gramse's home around February 2019. From the beginning, Mendoza pressured him to join his campaign to take Gramse's home. He even invited Scriven to dinner one night to persuade him. Scriven refused the invitation, deeming Mendoza's

7

efforts "despicable and dishonest." As to the specific complaints Mendoza raised, Scriven stated that Gramse had offered him a room heater and showed all her tenants how to bypass the timer if they wanted hot water on demand.

D.   *Ruling*[5]

Following an unreported hearing, the trial court (Judge Richard Whitney) denied Mendoza's motion, concluding he failed to meet his moving burden to demonstrate that Gramse's cross-claims were based on his protected activity. Reviewing the pleadings and declarations (§ 425.16, subd. (b)(2)), the court determined that Gramse's cross-claims were based not on "threats to sue and withholding of rent based on habitability arguments," but rather on Mendoza's "failure to pay rent, his refusal to leave the property and his 'constant physical, emotional and financial threats." It explained that "[w]hile Gramse's allegations that Mendoza threatened to sue her, in a vacuum, appear to implicate the litigation privilege and the anti-SLAPP statute, the allegation in the context of the other allegations and declarations[ ] indicate the cross-complaint arises out of Mendoza's unprotected activity," for which the threat to sue merely provided "evidentiary support and context."

In reaching its conclusion, the court drew parallels to *Olive Properties, L.P. v. Coolwaters Enterprises, Inc.* (2015) 241 Cal.App.4th 1169 (*Olive Properties*), in which a landlord sought to evict a tenant for not paying rent and common area maintenance charges. Three weeks before the landlord in

---

[5]   Mendoza lodged evidentiary objections to the declarations submitted by Gramse and Scriven but did not file a reply brief. The court overruled Mendoza's objections and, while denying his anti-SLAPP motion, also denied Gramse's request for attorney's fees. Neither the evidentiary rulings nor the denial of attorney's fees is challenged on appeal.

*Olive Properties* filed suit, the tenant preemptively sued for breach of the covenant of quiet enjoyment and negligent interference with prospective economic relations. Then, in response to the unlawful detainer complaint, the tenant filed an anti-SLAPP motion, claiming the landlord's unlawful detainer complaint arose out of its protected activity in filing a lawsuit. Rejecting this contention, the *Olive Properties* court reasoned that the landlord's action arose out of the tenant's unprotected acts of failing to pay rent and maintenance charges, rather than its subsequent act of filing suit. (*Id.* at p. 1176.) It cautioned that "[a] nonpaying tenant should not be permitted to frustrate or stall an anticipated eviction by filing a preemptive complaint against the landlord, followed by a special motion to strike the landlord's [subsequently filed] unlawful detainer complaint on the ground it arose out of the tenant's protected petitioning activity in filing the first lawsuit." (*Ibid.*) By analogy, Judge Whitney reasoned that an abusive tenant "who first refuses to leave the property and later abandons it after failing to pay rent" should not be allowed to frustrate a landlord's claims for elder abuse and nonpayment of rent by preemptively filing DEH complaints and threatening to sue.

## DISCUSSION

Mendoza challenges the trial court's conclusion that Gramse's claims did not arise out of his protected speech or petitioning activity. He suggests that three liability-forming acts alleged in the cross-complaint—threatening to sue, failing to pay rent, and failing to vacate the property—were all protected as prelitigation statements or conduct under section 425.16, subdivision (e)(2). Rejecting his arguments, we conclude that Mendoza's alleged liability is wholly predicated on *unprotected* activity and that the anti-SLAPP motion was properly denied.

9

A.    *Anti-SLAPP Framework*

Codified at section 425.16, the anti-SLAPP statute creates a summary-judgment-like procedure at the outset of a case to protect litigants from meritless lawsuits that might chill the exercise of constitutional rights to speech and petition.  (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884.)  Resolving an anti-SLAPP motion involves two steps.  The moving party bears the initial burden to establish that the challenged causes of action arise from its protected speech or petitioning activity.  (*Id.* at p. 884; see § 425.16, subd. (e) [listing four categories of protected activity].)  If the moving party carries its burden, the burden shifts to the opposing party to demonstrate that its claims have at least minimal merit.  (*Wilson*, at p. 884.)  "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute."  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*); see § 425.16, subd. (b)(1).)

In meeting its prong one burden, "the moving [party] must identify the acts alleged in the complaint that it asserts are protected and what claims for relief are predicated on them.  In turn, a court should examine whether those acts are protected and supply the basis for any claims."  (*Bonni, supra,* 11 Cal.5th at p. 1010.)  "[A] claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted."  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (*Park*).)  "A claim arises from protected activity when that activity underlies or forms the basis for the claim."  (*Id.* at p. 1062.)

If the anti-SLAPP movant meets its prong one burden, the burden shifts to the opposing party to "demonstrate that each challenged claim based

10

on protected activity is legally sufficient and factually substantiated.  The court, without resolving evidentiary conflicts, must determine whether the [opposing party's] showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.  If not, the claim is stricken." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.)

We review the grant or denial of an anti-SLAPP motion de novo.  (*Park, supra,* 2 Cal.5th at p. 1067.)  Where, as here, the inquiry focuses on prong one, "[w]e exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Id.* at p. 1067.)  "In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based.  [Citations.] We do not, however, weigh the evidence, but accept [the pleading party's] submissions as true and consider only whether any contrary evidence from the [anti-SLAPP movant] establishes its entitlement to prevail as a matter of law." (*Ibid.*)

B.    *Gramse's Cross-Claims Do Not Arise Out of Protected Activity.*

Pointing to allegations found in paragraphs 12 and 15 of Gramse's cross-complaint, Mendoza argues that each of her four cross-claims target his protected prelitigation activity.  Paragraph 12 alleges that Mendoza "began harassing and threatening" her in early 2019, screaming at her and threatening "to 'sue and take [her] property.' "  Paragraph 15 asserts that Mendoza refused to pay rent starting in the summer of 2019.  Located under the section heading, "General Allegations," these paragraphs precede Gramse's causes of action for elder abuse, financial elder abuse, intentional infliction of emotional distress, and breach of contract.  Mendoza maintains that a threat to sue was a protected prelitigation communication under *Feldman, supra,* 160 Cal.App.4th 1467.  He likewise contends that

11

withholding rent and refusing to vacate until the substandard conditions were repaired were justified under *Green, supra,* 10 Cal.3d 616 and Civil Code section 1942.4.

Gramse responds that none of her cross-claims arise out of Mendoza filing a complaint against her in court or making reports to DEH (as Mendoza himself seems to acknowledge), nor out of any protected prelitigation statements preceding those acts. Rather, she argues, her cross-claims rest on Mendoza's intimidation campaign and scare tactics in response to her rent increase, including his insinuation that he could use his gun and his open "scheming to rob her of her home." This conduct was not transformed into protected activity merely because he uttered the word, "sue."

As we explain, Gramse has the better argument. Reviewing the cross-complaint in conjunction with her declaration, Gramse's four cross-claims rest on allegedly harassing and threatening conduct by Mendoza following the rent increase, his refusal to pay rent, and his refusal to vacate the premises after being properly served with a notice to pay or quit. Specifically, Gramse's elder abuse and intentional infliction of emotional distress claims rest on Mendoza's threats and intimidation, including his insinuation about using his firearm and his threats to sue her and take her property. Her remaining claims for financial elder abuse and breach of contract rest on his failure to pay rent and continued occupancy after the notice to pay or quit was properly served.

Properly construed in light of the facts she has alleged, each of Gramse's cross-claims is based on Mendoza's *unprotected* activity. With regard to the threat to sue, Mendoza cannot use an anti-SLAPP motion to dispute Gramse's factual allegations and contend that based on how it *really* happened, his actions amounted to protected activity. And any defense

12

Mendoza might have excusing his failure to pay rent or vacate is not relevant to the prong one inquiry. Because Mendoza failed to demonstrate that the cross-claims arise out of his protected activity, his motion was properly denied.

       1.    *Mendoza's Threat to Sue is Unprotected.*

The anti-SLAPP statute protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).) This provision covers not only the filing of litigation or seeking of administrative action, but also communications preparatory to or in anticipation of bringing an action or other official proceeding. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 (*Briggs*); accord *Flatley v. Mauro* (2006) 39 Cal.4th 299, 322, fn. 11 (*Flatley*).)

At least in certain contexts, courts have had concluded that threats to sue constitute prelitigation conduct protected by the anti-SLAPP statute. For example, where there were ongoing disputes between a brother and sister over the distribution of their father's assets, the anti-SLAPP statute applied to a voicemail message by the brother's attorney accusing a listing agent of conspiring with the sister and threatening to take "appropriate action" in response. (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 37 (*Rohde*).) The voicemail messages concerned the subject of the dispute in which both the brother and sister threatened litigation, and "the spectre of litigation loomed over all communications between the parties at that time." (*Ibid.*) Likewise, threats to sue by a landlord's attorney against an unauthorized sublessee— consisting of telling the sublessees to move out, pay market rent, or face an unlawful detainer suit—were deemed to be protected prelitigation

13

communications because they were made preparatory to the landlord filing an unlawful detainer lawsuit against the sublessee. (*Feldman, supra,* 160 Cal.App.4th at p. 1481, citing *Rohde,* at p. 36.)

But these cases do not stand for the proposition that *any* threat to sue automatically merits anti-SLAPP protection. The anti-SLAPP statute requires a statement to bear a "connection with an issue under consideration or review" to merit statutory protection. (§ 425.16, subd. (e)(2).) Just as section 425.16 "does not accord anti-SLAPP protection to suits arising from any act [during litigation] having any connection, however remote, with an official proceeding" (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 866), *prelitigation* statements or conduct must bear some connection with a preexisting dispute to merit protection.

In *Rohde*, for example, a lawyer's threats to take appropriate action were "made in connection with an asset that was the subject of the dispute in which *both* plaintiff and defendant threatened litigation." (*Rohde, supra,* 154 Cal.App.4th at p. 37.) In the context of the parties' dealings, an attorney's voicemails threatening to take appropriate action were necessarily made "in anticipation of litigation 'contemplated in good faith and under serious consideration.' " (*Ibid.*) Citing *Rohde*, the *Feldman* court likewise concluded that statements by a landlord's attorney threatening to sue were protected because they "were communications in connection with an ongoing dispute and in anticipation of litigation." (*Feldman, supra,* 160 Cal.App.4th at p. 1481.) A similar approach applied in *Briggs*, where landlords sued a nonprofit for defamation for (among other things) advising their tenant on habitability issues stemming from a broken refrigerator. The landlords' claim targeted protected activity in *Briggs* because the nonprofit's counseling "apparently, was in anticipation of litigation," and the tenant had thereafter

14

sued over the broken refrigerator in small claims court. (*Briggs, supra,* 19 Cal.4th at p. 1115.)

Applying those principles here, we conclude Mendoza's threat to sue did not amount to protected activity. According to Gramse, Mendoza became verbally abusive when she tried to raise his rent, first insinuating that he had a gun and would use it, and later threatening to take Gramse's property and sue her for all she was worth. Crucial for our purposes is her assertion that Mendoza at no point attempted to compromise, much less express dissatisfaction with the hot water timing or space heaters. Crediting Gramse's allegations, as we must, Mendoza did not make his threat to sue in good faith or seriously contemplating litigation. (*Rohde, supra,* 154 Cal.App.4th at p. 37.) Indeed, his threat was not even made in apparent *anticipation* of litigation. (*Briggs, supra,* 19 Cal.4th at p. 1115.) There is simply too attenuated a connection between Mendoza's threat and any official proceeding to come within section 425.16, subdivision (e)(2).[6]

That Mendoza's declaration recounts the facts differently (suggesting he demanded repairs in threatening to sue) does not change our conclusion. In evaluating whether the challenged claims arise from protected activity, we "accept [Gramse's] submissions as true and consider only whether any contrary evidence from [Mendoza] establishes [his] entitlement to prevail as a

---

[6] In reaching this conclusion, we diverge to some extent from the trial court's reasoning that Mendoza's threat to sue Gramse merely provided *context* or *evidence* for her cross-claims. Gramse's elder abuse and intentional infliction of emotional distress claims are predicated in part on Mendoza's threat to sue her and take her property. As to those cross-claims, the threat to sue (like the threat regarding his firearm) "*itself* is the wrong complained of." (*Park, supra,* 2 Cal.5th at p. 1060; see, e.g., *Bonni, supra,* 11 Cal.5th at p. 1012 [question is whether the acts are alleged as a basis for relief, and not merely recited as background].)

matter of law." (*Park, supra,* 2 Cal.5th at p. 1067.) Mendoza's declaration at most creates a factual dispute on the merits of Gramse's claim, and does not demonstrate he engaged in protected activity as a matter of law. Moreover, an anti-SLAPP movant cannot reframe the allegations in a pleading to meet its prong one burden. (See *Central Valley Hospitalists v. Dignity Health* (2018) 19 Cal.App.5th 203, 218–219 (*Central Valley*) [defendant could not recast what it *claimed* the plaintiff's causes of action were based on]; *Medical Marijuana, Inc. v. Project CBD.com* (2020) 46 Cal.App.5th 869, 883 [because the pleadings frame the issues for an anti-SLAPP motion, the act that underlies a plaintiff's claim "*is determined from the plaintiff's allegations*"].)[7] Simply put, Mendoza does not meet his prong one burden to show that Gramse's cross-claims for elder abuse and intentional infliction of emotional distress arise out any prelitigation communication that was sufficiently connected to anticipated litigation that it warrants protection under the anti-SLAPP statute.

2.    *Mendoza's Nonpayment of Rent and Failure to Vacate Are Unprotected.*

Gramse's cross-claims for financial elder abuse and breach of contract rest on Mendoza's alleged nonpayment of rent and refusal to vacate after being properly served with a notice to pay rent or quit. Asserting that those

---

[7]    *Simmons v. Bauer Media Group USA, LLC* (2020) 50 Cal.App.5th 1037, 1047 is instructive. There, a tabloid was sued by a celebrity after its agent placed an illegal tracking device on the celebrity's car. The tabloid conceded that under *Flatley, supra,* 39 Cal.4th 299, placing an illegal tracking device on the car was not protected speech. But it insisted that it merely hired the agent to take photographs—newsgathering activities amounting to protected speech. (*Simmons,* at p. 1047.) Rejecting this argument, the court noted that the tabloid's assertion contradicted allegations in the operative complaint. The parties' factual dispute went to the merits of the celebrity's claims and was not relevant to the prong one inquiry. (*Ibid.*)

16

claims *also* challenge his protected prelitigation conduct, Mendoza contends he was entitled to withhold rent and refuse to vacate the home under *Green, supra,* 10 Cal.3d 616 and Civil Code section 1942.4 on account of allegedly substandard conditions in Gramse's home. As we explain, Mendoza misunderstands the import of those authorities.

The focus in prong one is on "*the elements of the challenged claim* and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park, supra,* 2 Cal.5th at p. 1063, italics added.) "Arguments about the merits of the claims are irrelevant to the first step of the anti-SLAPP analysis." (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1388; see *Central Valley, supra,* 19 Cal.App.5th at p. 217 [" '[t]he question is what is pled—not what is proven' "].) Reviewing the pleadings and declarations, we must "determine what conduct is actually being challenged, not . . . whether the conduct is actionable." (*Coretronic*, at p. 1389.) Our sole inquiry is whether "the defendant's *activity* that gives rise to his or her asserted liability . . . constitutes protected speech or petitioning." (*Navellier, supra,* 29 Cal.4th at p. 92; see *Park,* at p. 1063 [liability-forming act must *itself* constitute protected speech or petitioning].)

A claim for financial elder abuse requires the following elements: (1) the taking of property, (2) of a person over the age of 65, (3) for a wrongful use or with the intent to defraud, and (4) resulting damages. (Welf. & Inst. Code, § 15610.30, subd. (a)(1); see CACI No. 3100.) A claim for breach of contract requires the existence of a valid contract, performance by the suing party or an excuse for nonperformance, failure to perform by the other party, and resulting damages. (*Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830.) Gramse alleges that Mendoza is liable under these theories because he refused to pay rent or vacate the premises after proper service of a notice to

17

pay or quit. Generally speaking, "[a] tenant's failure to pay rent . . . is not an act in furtherance of the lessee's right of petition or free speech." (*Olive Properties, supra,* 241 Cal.App.4th at p. 1176.)

Reasoning that a tenant's duty to pay rent is mutually dependent on a landlord's fulfillment of the implied warranty of habitability implied in every residential lease, the Supreme Court held in *Green* that a tenant could *defend* against a claim for nonpayment of rent by arguing that the nonpayment was justified and no rent was due. (*Green, supra,* 10 Cal.3d at p. 635.) Along similar lines, Civil Code section 1942.4 statutorily prohibits a landlord from collecting rent or issuing a notice to pay or quit where the dwelling has substandard conditions. But even assuming these authorities provide a potential *defense* to Gramse's claims (e.g., by negating wrongful intent or excusing contractual nonperformance), that would not transform the *bases* for those claims into protected activity. Mendoza cannot establish that his failure to pay rent or refusal to vacate are *themselves* acts in furtherance of his right to petition or free speech (see *Park, supra,* 2 Cal.5th at p. 1063) merely because he believes those acts were legally justified. (See, e.g., *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 703 ["privileged activity" does not equate to "protected activity" under the anti-SLAPP statute].) Accordingly, he did not meet his burden to establish that cross-claims based on his nonpayment of rent and failure to vacate arise out of protected prelitigation activity.

Because Mendoza did not meet his prong one burden as to any of the four causes of action asserted in Gramse's cross-complaint, the trial court properly denied his motion without reaching prong two. (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 733.)

## DISPOSITION

The order denying the anti-SLAPP motion is affirmed.  Gramse is entitled to recover her costs on appeal.

DATO, J.

WE CONCUR:

AARON, Acting P. J.

DO, J.