Filed 7/26/24  OrderYourCars.Com v. Cram CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ORDERYOURCARS.COM, INC.,<br><br>    Cross-complainant and<br>    Respondent,<br><br>    v.<br><br>HEATHER CRAM,<br><br>    Cross-defendant and<br>    Appellant. | B332559<br><br>(Los Angeles County<br>Super. Ct. No.<br>22NWCV00849) |

_____

APPEAL from an order of the Superior Court of Los Angeles County, Lee W. Tsao, Judge.  Affirmed.

Lemon-Aid Legal, Raphael E. Davis; Law Office of Monica Hartsock and Monica Hartsock for Cross-defendant and Appellant.

Kolar & Associates, Elizabeth L. Kolar and Tami S. Crosby for Cross-complainant and Respondent.

_____

Appellant and cross-defendant Heather Cram (Cram) appeals from an order denying her special motion to strike under Code of Civil Procedure section 425.16,[1] a defamation cause of action asserted against her by respondent and cross-complainant OrderYourCars.Com, Inc., doing business as Best Buy Quality Cars (BBQC). Because the trial court found that the gravamen of BBQC's defamation claim was activity protected under section 425.16, the sole issue on appeal is whether BBQC met its burden of demonstrating a probability of prevailing on the claim. We conclude that BBQC sustained that burden and therefore affirm the trial court's ruling.

## BACKGROUND

On May 27, 2021, Cram signed a sales contract with BBQC for the purchase of a used 2011 Chevrolet Silverado 1500 truck, with 71,066 miles on the odometer. Cram also signed documents stating she was purchasing the truck " 'AS IS' " and that BBQC was making no warranty concerning the truck. When Cram purchased the truck, she also purchased a Vehicle Service Contract covering the truck from GWC Warranty.

BBQC alleges that although Cram signed the sales contract on May 27, 2021, she did not take possession of the truck until May 30, 2021, when she signed a Used Vehicle Disclosure confirming she received actual possession on May 30, 2021.

---

[1] All further statutory references are to the Code of Civil Procedure, unless stated otherwise. Section 425.16 is also referred to as the strategic lawsuit against public participation statute, or anti-SLAPP statute, and a special motion to strike under section 425.16 is also commonly referred to as an anti-SLAPP motion.

2

On May 28, 2021, BBQC took the truck to a third-party vendor to have it weighed and obtained a Weighmaster Certificate stating the truck was weighed at 12:07 p.m. on May 28, 2021. On May 29, 2021, BBQC took the truck to a third-party vendor to have it smog checked. The smog certification documents indicate the truck underwent a smog test at 11:00 a.m. on May 29, 2021, and passed the smog test.

Cram claims the truck's check engine light illuminated after she purchased and took possession of it while she was driving home from BBQC's premises. She took the truck to Selman Chevrolet for repairs, which were paid for in part by GWC under the terms of the Service Contract Cram purchased.

## PROCEDURAL HISTORY

On September 19, 2022, Cram filed a complaint against BBQC and others,[2] asserting causes of action for violations of the California Consumer Legal Remedies Act, Unfair Competition Law, and Vehicle Code section 11711; breach of express and implied warranties pursuant to the Magnusson-Moss Warranty Act; fraud; negligent misrepresentation; and negligence.

BBQC cross-complained against Cram, asserting claims for intentional and negligent misrepresentation, interference with current and prospective economic relations, and as relevant to this appeal, libel and slander. BBQC alleges in paragraph 15 of its cross-complaint as follows: "[B]etween September 30, 2021 and December 30, 2021, Cram reported to the Better Business Bureau ('BBB'), Brian Vu at the Bureau of Automotive Repair

---

[2] Cram also sued BBQC's bond surety, American Contractors Indemnity Company (ACIC), and Ally Bank, the assignee of her purchase contract with BBQC. Neither of those two defendants is a party to this appeal.

('BAR'), Garen Kasparin, Esq. with BBQ[C]'s bond carrier and Kenneth Holt with the DMV, through telephone communications, on-line complaint activity reports, emails and letters, that she obtained possession of the subject vehicle prior to September 30, 2021, that BBQ[C] obtained a fraudulent smog certificate for the subject vehicle, that BBQ[C] committed fraud in the sale of the vehicle to Cram, that the mechanical problems with the subject vehicle existed prior to her purchase of the subject vehicle, that BBQ[C] was aware of the mechanical issues with the subject vehicle prior to its sale to Cram, that the BBB and DMV had opened investigations and commenced administrative actions against BBQ[C] with regard to Cram's vehicle purchase transaction with BBQ[C], that the DMV Investigations Division has also agreed with her complaint of fraud and is brin[g]ing administrative action against BBQ[C] and that the DMV is turning the fraud case over to the District Attorney of Los Angeles."

BBQC further alleges that Cram's statements were false and exposed BBQC to hatred, contempt, ridicule, and obloquy and damaged BBQC's reputation and relationships.

After filing its cross-complaint, BBQC removed the case to federal court based on Cram's breach of warranty claims under the federal Magnusson-Moss Warranty Act (15 U.S.C. § 2301 et seq.). BBQC then filed a motion for summary judgment. The federal district court granted the motion in part, dismissing the Magnusson-Moss claims. The federal court declined to exercise supplemental jurisdiction over the remaining causes of action and remanded the matter back to the superior court.

4

Cram filed an anti-SLAPP motion, seeking to strike BBQC's cross-complaint in its entirety. In her motion, Cram argued that all of BBQC's cross-claims were premised on communications or activities that constitute protected speech or petitioning activity made in connection with an issue of public interest or anticipated litigation. Cram further argued that BBQC could not demonstrate a probability of prevailing because all of its claims were barred by the litigation privilege. In support of the anti-SLAPP motion, Cram submitted, among other documents, the declaration of her attorney, Raphael Davis; her own declaration made to Brian Vu of the California Bureau of Automotive Repair; and an unsigned Written Notice of Claim sent by Cram to BBQC's surety, ACIC.

BBQC opposed the motion and submitted, among other documents, the declaration of its owner and custodian of records, Edmond Ghoulian.

The parties filed evidentiary objections to their respective opposing declarations. The trial court sustained all of BBQC's objections to Davis's declaration and sustained in part Cram's objections to Ghoulian's declaration. The trial court then ruled that Cram had met her initial burden of establishing that BBQC's cross-claims were based on statements made in furtherance of the exercise of Cram's constitutional right of free speech in connection with an issue of public interest, thereby shifting to BBQC the burden of demonstrating a probability of prevailing on its claims.

The trial court concluded that BBQC had not met that burden as to its causes of action for intentional misrepresentation, negligent misrepresentation, and intentional interference with prospective economic advantage and granted

5

the anti-SLAPP motion as to those claims. As to the defamation claim, the trial court determined that BBQC presented sufficient evidence that Cram's false statements could injure BBQC's business, thereby satisfying BBQC's burden of showing its defamation cause of action had at least " 'minimal merit' " and denied the motion to strike that cause of action. This appeal followed.

## DISCUSSION

### I. Applicable law and standard of review

Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Determining whether the statute bars a given cause of action requires a two-step analysis. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) First, the court must decide whether the party moving to strike a cause of action has made a threshold showing that the cause of action "aris[es] from any act . . . in furtherance of the [moving party's] right of petition or free speech." (§ 425.16, subd. (b)(1); accord, *Navellier,* at p. 88.)

If the court finds that a defendant has made the requisite threshold showing, the burden then shifts to the plaintiff to demonstrate a "probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); accord, *Navellier, supra,* 29 Cal.4th at p. 88.)

6

To demonstrate a probability of prevailing, a party opposing an anti-SLAPP motion need only demonstrate a legally sufficient claim and submit a prima facie showing of facts supporting the claim. A court reviews that showing under a standard similar to that employed in determining nonsuit, directed verdict, or summary judgment motions. (*Navellier, supra,* 29 Cal.4th at pp. 88–89; *Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1016–1017.) However, "[a] motion to strike under section 425.16 is not a substitute for a motion for a demurrer or summary judgment [citation]. In resisting such a motion, the [opposing party] need not produce evidence that he or she can recover on every possible point urged. It is enough that the [opposing party] demonstrates that the suit is viable, so that the court should deny the special motion to strike and allow the case to go forward." (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 905.) "The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claims as a matter of law." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384–385.) "[C]laims with the requisite minimal merit may proceed." (*Navellier, supra,* 29 Cal.4th at p. 94.)

"Review of an order granting or denying a motion to strike under section 425.16 is de novo." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

## II. Defamation and the litigation privilege

Defamation is a reputational injury, occurring via libel or slander. (Civ. Code, § 44.) "Defamation requires the intentional

publication of a false statement of fact that has a natural tendency to injure the plaintiff's reputation or that causes special damage." (*Burrill v. Nair* (2013) 217 Cal.App.4th 357, 383 (*Burrill)*, disapproved on another ground by *Baral v. Schnitt, supra,* 1 Cal.5th at p. 396, fn. 11.)

The litigation privilege is a defense to liability for defamation. (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 (*Action Apartment*).) The litigation privilege is therefore relevant to the second prong of the anti-SLAPP analysis because it may present a substantive defense a party opposing an anti-SLAPP motion must overcome to demonstrate a probability of prevailing. (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1485.)

" 'The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a "publication or broadcast" made as part of a "judicial proceeding" is privileged. This privilege is absolute in nature, applying "to *all* publications, irrespective of their maliciousness." [Citation.] "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." [Citation.] *The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto*, or afterwards." [Citation.]' (*Action Apartment, supra,* 41 Cal. 4th at p. 1241, second italics added.)" (*Feldman v. 1100 Park Lane Associates*, *supra,* 160 Cal.App.4th at p. 1485.) A prelitigation communication is privileged, however, "only when it relates to litigation that is contemplated in good faith and under serious consideration." (*Action Apartment*, at p. 1251.) "Whether

8

a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact." (*Ibid.*)

## III.  The litigation privilege does not apply

In support of her anti-SLAPP motion, Cram submitted a declaration under penalty of perjury that she purportedly made to Brian Vu, an employee of the BAR.  In her declaration, Cram stated that the smog certificate BBQC obtained for the truck, indicating the truck had undergone a smog inspection on May 29, 2021, was false because Cram had possession of the truck that entire day and had not taken it for a smog inspection on that day or any other day.  Cram also submitted an unsigned "Written Notice of Claim" recounting the issues with the truck's smog inspection, the engine repair costs she incurred, and her complaints to the DMV.  The Written Notice of Claim states in part that Cram "contacted Ed at Best Buy Quality Cars via email on 8/11/21 with a Demand Letter/Request for Restitution" but when Ed "refused to help" she "chose to stop communication and go a different route."  Neither communication suggests or proposes litigation.  (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 34–35, 36 [for the litigation privilege to apply to prelitigation statements, "a lawsuit or some other form of proceeding must actually be suggested or proposed" and "the contemplated litigation must be *imminent*," not a " 'bare possibility' "].)  Cram presented no admissible evidence that her conduct or communications were undertaken when litigation was under serious consideration.[3]

---

[3] The trial court sustained evidentiary objections to statements in a declaration by Cram's attorney that Cram's

9

The litigation privilege does not bar BBQC's defamation cause of action.[4] We therefore consider whether BBQC sustained its burden of demonstrating a probability of prevailing on its defamation claim.

## IV. Probability of prevailing

"The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1369.) Defamation may be effected by either libel or slander. (Civ. Code, § 44.) Slander is a false publication communicated orally. (Civ. Code, § 46.) Libel is publication of defamatory matter by written or printed words. (Civ. Code, § 45.) "[F]alse statements charging the commission of crime or tending directly to injure a plaintiff in respect to his or her profession by imputing dishonesty or questionable professional conduct are defamatory per se." (*Burrill, supra,* 217 Cal.App.4th at p. 382.)

BBQC met its burden of demonstrating a probability of prevailing on its defamation claim. Ghoulian's declaration and

---

communications and conduct were made "in anticipation of litigation" or as "step[s] prior to litigation."

[4] We do not address Cram's contentions, raised for the first time on appeal, that the common interest and the fair and true report privileges set forth in Civil Code section 47, subdivisions (c) and (d), respectively, bar BBQC's defamation claim. (*Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1326 [" ' "theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were [decided]" ' "].)

Cram's Written Notice of Claim establish that Cram published statements concerning criminal charges against BBQC in oral or written communications to ACIC. That Cram also lodged complaints concerning BBQC's allegedly fraudulent acts with the BAR and DMV does not, as Cram contends, transmute BBQC's defamation claim into one premised on mixed allegations of protected and unprotected activity. The gravamen of BBQC's defamation claim is Cram's false statements to ACIC that criminal charges were being brought against BBQC.

Ghoulian's declaration also sets forth facts showing that Cram's statements concerning criminal charges against BBQC were false. Paragraph 4 of Ghoulian's declaration states in relevant part: "Sometime before she filed her Complaint here, Cram stated to me and BBQC that the BAR and DMV were opening investigations into BBQC and filing administrative and criminal charges. I was also notified by Garen Kasparian of BBQC's dealership surety bond carrier ACIC that Cram had made similar claims and accusations of administrative and criminal charges. I was also noticed by the [Better Business Bureau] that Cram had made similar claims and accusations of administrative and criminal charges."[5]

---

[5] During oral argument, Cram's counsel argued that the last two sentences of paragraph 4 of Ghoulian's declaration quoted above are hearsay and should be disregarded. Cram forfeited her hearsay objection to those statements by failing to raise that objection below. (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 725 [failure to object to admission of hearsay documents in the trial court forfeits the issue on appeal].) The trial court sustained Cram's evidentiary objections, based on hearsay, lack of foundation, and lack of personal knowledge, to

Paragraph 3 of Ghoulian's declaration states: "As the owner of BBQC and due to my years of experience in the automotive industry, I have personal knowledge that the California Bureau of Automotive Repair ('BAR') regulates repair shops but not simply dealerships that sell vehicles. BBQC buys and sells vehicles but it does not have a repair shop at its location. As such, BBQC is not licensed or regulated by the BAR because it has no repair shop and is not an emissions testing facility."

Ghoulian's declaration establishes that the BAR lacks jurisdiction or authority to investigate or prosecute criminal charges against BBQC and supports BBQC's claim that Cram's statements regarding administrative and criminal charges by the BAR against BBQC were false. The false statements concerning criminal charges are defamatory per se. (*Burrill, supra,* 217 Cal.App.4th at p. 382.) Ghoulian's declaration also supports BBQC's claim that the false statements made to its surety, ACIC, have a tendency to injure BBQC's trade or business. The declaration states in relevant part: "ACIC is BBQC['s] bond carrier and can refuse to do business with BBQC in the future and/or refuse to renew its coverage of BBQC if there are too many valid claims against BBQC."

---

the final sentence in paragraph 4 of Ghoulian's declaration, which states: "However, based on information I received from Garen Kasparian after Cram made these claims, I am informed and believe and thereon allege that before Cram made these statements and claims of administrative/criminal charges, she was clearly told by Brian Vu of the BAR and Kenneth Holt of the DMV that no such hearings or charges were being leveled against BBQC."

12

BBQC made a prima facie factual showing that its defamation claim is viable.  (*Wilbanks v. Wolk, supra,* 121 Cal.App.4th at p. 905.)  Cram presented no evidence that defeats that claim as a matter of law.  The trial court accordingly did not err by denying the special motion to strike.

## DISPOSITION

The order denying the special motion to strike Best Buy Quality Cars' cross-claim for defamation is affirmed.  Best Buy Quality Cars shall recover its costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.

13